Present:  All the Justices

TYRONE ALPHONSO WILSON

v.  Record No. 051968     OPINION BY JUSTICE ELIZABETH B. LACY
                                       June 8, 2006
COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal, Tyrone Alphonso Wilson challenges the
sufficiency of the evidence to establish possession with
intent to distribute cocaine, a violation of Code § 18.2-248,
and possession with intent to distribute more than one-half
ounce but less than five pounds of marijuana, a violation of
Code § 18.2-248.1.  He also challenges the trial judge's
actions in refusing to consider a plea agreement and to recuse
himself from Wilson's case.  Although we find no merit in
Wilson's challenge to the sufficiency of the evidence, we
conclude that the judgments of conviction must be vacated and
the case remanded because the trial judge's actions
demonstrated an appearance of partiality and, therefore, the
trial judge abused his discretion in refusing Wilson's recusal
motion.

Facts and Proceedings

Several officers and investigators from the Norfolk City
Police Department executed a search warrant on an apartment
after conducting surveillance of the apartment for over an
hour.  Inside the apartment, the officers found six men,

including Wilson.  The police recovered from cabinets in the kitchen six bags holding smaller bags of marijuana, a number of "baggies," cash, and a scale covered with what appeared to be cocaine residue.  A bag containing cocaine, a nine-millimeter pistol, marijuana, a cell phone, and a pager device in plain view in the living room were also recovered by the police.

Officers found Wilson in the kitchen of the apartment. While lying on the floor at the direction of the officers, Wilson told the officers he had a .45 caliber pistol, which the officers retrieved.

No drugs were found on Wilson's body, but he did have $1,755 cash and keys to a van which was parked outside the apartment.  The police officers found amounts of cocaine worth $350,000 hidden in the "traps" in the door panels of the van. The officers also recovered from the van a magazine of bullets for a .45 caliber gun.  The only .45 caliber gun recovered was the one found on Wilson.

Wilson was indicted for two counts of possession of a firearm while in possession of cocaine, Code § 18.2-308.4, possession of cocaine with intent to distribute, Code § 18.2-248, possession of more than one-half ounce but less than five pounds of marijuana with intent to distribute, Code § 18.2-

2

248.1, and possession of a weapon by a convicted felon, Code § 18.2-308.2.

On July 16, 2002, Wilson and his attorney, Allen D. Zaleski, appeared in the Circuit Court of the City of Norfolk before Judge Charles E. Poston briefly before being transferred to Judge Charles D. Griffith, Jr.'s courtroom. The case was set for a bench trial, but when the case was transferred to Judge Griffith, Wilson requested a trial by jury. In response to Judge Griffith's questions, Zaleski admitted that he counseled Wilson to ask for a jury trial specifically because the case was transferred to Judge Griffith. Judge Griffith then attempted to relieve Zaleski from representing Wilson in the case. When Judge Griffith learned that he could not remove Zaleski because Wilson had retained Zaleski to represent him, Judge Griffith ordered that Zaleski be removed from the circuit court's list of court-appointed attorneys "effective immediately." Judge Griffith declared he was "not going to have a court-appointed lawyer who practices that way in this court building," and referred to Zaleski's actions as "shenanigans." During this proceeding, Judge Griffith also ruled that by waiting to request a jury trial until the case was transferred, Wilson waived the 14-day notice period required for admission of

3

juvenile records under Code § 19.2-295.1 and that Wilson could not later waive his right to a jury trial.

On September 6, Wilson appeared before Judge Everett A. Martin, changed his request back to a bench trial, and was arraigned on all the charges. Judge Martin set the case for a bench trial for the following week. Upon learning that Wilson's case was again set for a bench trial, Judge Griffith approached the chief judge of the circuit court and suggested that a defendant should not be allowed "to avoid a particular courtroom" by seeking a jury trial. Following this exchange, the chief judge removed the case from the "open docket," that is, assignment of the trial judge on the day of trial, and assigned the case to Judge Griffith.

On September 10, 2002, when Wilson appeared before Judge Griffith for the trial, the following exchange took place:

> MR. ZALESKI: Your Honor, we're very close to a plea agreement in this case.
>
> THE COURT: We're ready to start the trial.
>
> MR. ZALESKI: If we present a plea agreement –
>
> THE COURT: The trial is getting ready to begin, Mr. Zaleski.
>
> MR. ZALESKI: Yes, Your Honor. Can I have just two minutes to talk to my client?
>
> THE COURT: I have asked them to bring him out so we can start the trial. This case has been on the docket plenty of times. It's time to go.

. . . .

[The Clerk calls the case and some of the witnesses are sworn.]

. . . .

MRS. BRYANT:[1]  Before the Court proceeds in this case further, it's my understanding that Mr. Wilson would like to enter a plea of guilty. We don't have a plea agreement written out.  We would ask the Court to accept the plea.  It calls for a total sentence of 20 years with four to serve.

THE COURT:  I'm sorry, but we're getting ready to start a trial.  You-all have had plenty of time to negotiate.  We're not doing any negotiations right now.  We're starting a trial.

MR. ZALESKI:  You're rejecting the agreement?  I would move –

THE COURT:  There is no agreement.  This case is beginning trial.  You are beyond your time to negotiate a plea agreement.  We're starting a trial today.

Counsel for the Commonwealth then requested a conference in chambers during which she explained to Judge Griffith that on the eve of trial the Commonwealth learned of certain exculpatory evidence connected with a Commonwealth's witness. Based on this development, the Commonwealth offered Wilson a plea agreement.  After this explanation, the following exchange took place.

THE COURT: All right.  Let's go.  You seem to think that once this trial begins, which has begun . . . that somehow or another you have a

---

[1] Ms. Bryant was an assistant Commonwealth's Attorney.

5

right to stop everything and present a plea agreement and force me to consider a plea agreement. This trial is ready to begin. Your time for negotiating is over. It's time to start the trial.

MRS. BRYANT: I was actually –

MR. ZALESKI: Is the Court saying you will not consider any plea agreement at this time?

THE COURT: You have no plea agreement.

MR. ZALESKI: That is the Court's position?

THE COURT: We have started a trial. It's too late to negotiate.

MR. ZALESKI: You are stating you will not consider any plea agreement at all?

THE COURT: I'm not going to interrupt this trial and submit a plea agreement. That's correct. We are ready to start the trial.

At the conclusion of the evidence and the arguments, Judge Griffith found the defendant guilty of all charges.[2] On April 25, 2003, Judge Griffith sentenced Wilson to a total of 60 years imprisonment, with 30 years suspended.

Wilson appealed to the Court of Appeals of Virginia. A three-judge panel of the Court of Appeals reversed the trial court's judgment and remanded the case. Wilson v. Commonwealth, Record No. 1229-03-1 (January 18, 2005). In a rehearing en banc, the judgment of the trial court was

---

[2] After considering post-trial motions, the trial court dismissed one of the convictions for possession of a firearm while in possession of cocaine on double jeopardy grounds.

6

affirmed by a divided vote. Wilson v. Commonwealth, Record No. 1229-03-1 (Aug. 23, 2005) (en banc). Wilson appealed to this Court.

## I. Sufficiency of the Evidence

Wilson claims that the evidence at trial was insufficient to support his convictions of possession with intent to distribute more than one-half ounce but less than five pounds of marijuana and possession with intent to distribute cocaine. Wilson's arguments are directed entirely to the sufficiency of the evidence as it relates to actual or constructive possession of cocaine and marijuana; evidence of the intent to distribute or the amount of the drugs is not at issue. Because he did not assign error to the sufficiency of evidence to support his conviction for possession of cocaine while possessing a firearm, he has therefore conceded the factual finding that he was in actual or constructive possession of cocaine. Accordingly, Wilson has waived, and we will not address, the sufficiency of the evidence of possession of cocaine in regard to the intent to distribute charge. Our consideration of this assignment of error is limited to the sufficiency of the evidence as it relates to Wilson's possession of marijuana. Wilson argues that the Commonwealth failed to prove he exercised dominion and control over the marijuana or was aware of its presence in the apartment.

7

The law on possession of illicit drugs in this Commonwealth is well established. In Walton v. Commonwealth, 255 Va. 422, 497 S.E.2d 869 (1998), we stated:

> In order to convict a person of illegal possession of an illicit drug, the Commonwealth must prove beyond a reasonable doubt that the accused was aware of the presence and character of the drug and that the accused consciously possessed it. Andrews v. Commonwealth, 216 Va. 179, 182, 217 S.E.2d 812, 814 (1975). An accused's mere proximity to an illicit drug, however, is not sufficient to prove possession. Drew v. Commonwealth, 230 Va. 471, 473, 338 S.E.2d 844, 845 (1986). In addition, ownership or occupancy of the premises where the drug is found does not create a presumption of possession. Code § 18.2-250.1(A); Garland v. Commonwealth, 225 Va. 182, 184, 300 S.E.2d 783, 784 (1983). Nonetheless, these factors may be considered in deciding whether an accused possessed the drug. Lane v. Commonwealth, 223 Va. 713, 716, 292 S.E.2d 358, 360 (1982).
>
> Additionally, proof of actual possession is not required; proof of constructive possession will suffice. Constructive possession may be established when there are " 'acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the [accused] was aware of both the presence and character of the substance and that it was subject to his dominion and control.' " Drew, 230 Va. at 473, 338 S.E.2d at 845 (quoting Powers v. Commonwealth, 227 Va. 474, 476, 316 S.E.2d 739, 740 (1984)).

Id. at 426, 497 S.E.2d at 871-72.

When analyzing a challenge to the sufficiency of the evidence, this Court reviews the evidence in the light most favorable to the prevailing party at trial and considers any reasonable inferences from the facts proved. Viney v.

8

_Commonwealth_, 269 Va. 296, 299, 609 S.E.2d 26, 28 (2005). The judgment of the trial court will only be reversed upon a showing that it "is plainly wrong or without evidence to support it." Code § 8.01-680; _see_ _Viney_, 269 Va. at 299, 609 S.E.2d at 28. Applying these well established principles to the facts of the present case, we find the evidence sufficient to support Wilson's conviction.

The only entrance to the apartment opened to the living room where marijuana, a bag of cocaine, and a gun were in plain view when the police entered the apartment. Although the police found Wilson in the kitchen, Wilson had to walk through the living room to reach the kitchen. Therefore, it is reasonable to infer that Wilson was aware of the presence and character of the drugs in the living room.

The apartment had very few personal effects and no food, and the police found in plain view a video camera and monitor, which one of the officers testified are paraphernalia often used in drug houses for surveillance. Based on the appearance of the apartment combined with the presence of the scale, multiple "baggies" of marijuana, and cash found in the kitchen cabinets, it is reasonable to infer that the apartment was used as part of a drug distribution scheme. While Wilson's presence alone does not prove possession of the drugs, the marijuana in plain view in the living room, the character of

the apartment, and the cash and gun found on Wilson's person prove sufficient dominion and control over the illicit drugs to establish constructive possession. Walton, 255 Va. at 426, 497 S.E.2d at 871-72. Thus, sufficient evidence existed to support Wilson's conviction for possession with intent to distribute marijuana.

## II. Recusal

Wilson asserts that Judge Griffith abused his discretion in refusing to recuse himself from the case because of his actions during the July 16 hearing and at trial.

Judge Griffith, when asked to recuse himself, explained that he was "as capable as anyone else is at giving [Wilson] a fair trial," that he would be fair, "I can guarantee it." Thus Judge Griffith concluded that he need not recuse himself.

In considering a motion for recusal, a judge must exercise reasonable discretion in determining whether he or she possesses such bias or prejudice that would deny a litigant a fair trial. Justus v. Commonwealth, 222 Va. 667, 673, 283 S.E.2d 905, 908 (1981). We review a judge's decision applying an abuse of discretion standard. When considering a judge's decision regarding recusal, we have stated that in making the recusal decision, "the judge must be guided not only by the true state of his impartiality, but also by the public perception of his fairness, in order that public

10

confidence in the integrity of the judiciary may be maintained." Stamper v. Commonwealth, 228 Va. 707, 714, 324 S.E.2d 682, 686 (1985). We have also suggested that the Canons of Judicial Conduct are instructive, although not determinative in our review of a judge's recusal decision. Jackson v. Commonwealth, 267 Va. 226, 229-30, 590 S.E.2d 518, 519-20 (2004); Commonwealth v. Huynh, 262 Va. 165, 174, 546 S.E.2d 677, 681 (2001).

Upon review of this record, including the preemptory immediate removal of Zaleski from the court-appointed list, attempted removal of Zaleski as attorney for the defendant, reference to Zaleski's actions as "shenanigans," and the statement that he did not want Zaleski appearing in the court building as a court-appointed attorney, we conclude that Judge Griffith exhibited a personal bias or prejudice against Zaleski.

Judge Griffith further evidenced his personal bias against Zaleski when he solicited assignment of the case, causing it to be removed from the "open docket." The record shows that Judge Griffith believed that Wilson's changing his request from a bench trial, to a jury trial, then back to a bench trial stemmed from Zaleski's "shenanigans" to avoid being tried by Judge Griffith and that Judge Griffith suggested to the chief judge of the circuit that he be

11

assigned the case because a defendant shouldn't be allowed "to avoid a particular courtroom solely by asking for a jury trial." The subsequent request to hear Wilson's case in light of the judge's stated view of Wilson's counsel raises a concern regarding the judge's impartiality and the public perception of his fairness.

Finally, declaring that there was no plea agreement and refusing to allow the agreement to be reduced to writing similarly raises questions about the judge's attitude toward Wilson's counsel and counsel for the Commonwealth. Judge Griffith declared that there was "no plea agreement" even though counsel for the Commonwealth and for Wilson stated that an agreement had been reached, and he refused to allow the parties the opportunity to reduce the agreement to writing for presentation to the court because the time for "negotiating [was] over."

While the procedure described in Rule 3A:8(c), titled "Plea Agreement Procedure," refers to a written, signed plea agreement, creation of such an agreement does not depend on the agreement being in written form or on its specific terms being recited to the judge. A judge need know the specifics of an agreement only when asked to accept or reject the plea agreement. Here, both parties represented to Judge Griffith that a plea agreement existed and that it was initiated at the

12

request of the Commonwealth.  The parties also explained the reasons for the timing of the agreement to the judge.  Judge Griffith nevertheless continued to maintain that there was no agreement, that the time for negotiating such an agreement "had passed," and that the case was going to proceed to trial immediately.  Judge Griffith made it completely clear that he would not consider a plea agreement and would not allow counsel an opportunity to reduce the agreement to writing.  The judge's position gives rise to a reasonable question concerning his impartiality and the public's perception of his fairness.

The Commonwealth argues that these instances address Judge Griffith's attitude toward counsel rather than Wilson and that during the actual trial Judge Griffith did not make any rulings that could be considered prejudicial to Wilson.  Consequently, the Commonwealth urges, there is no prejudice or impartiality shown toward Wilson and no need for recusal.  We disagree with the Commonwealth.

First, an apparent bias against a litigant's attorney gives rise to a perception by the litigant and the public in general that the judge may not be fair and impartial in the conduct of the proceeding.  See Canon 3(E)(1)(a) (reasonable question of judge's partiality when personal bias or prejudice shown against party or party's counsel).  Judge Griffith's

13

prejudice or bias against Zaleski is repeatedly reflected in this record and such bias does raise questions about Judge Griffith's ability to be impartial in this proceeding. Furthermore, the refusal to consider the plea agreement or to allow the parties an opportunity to reduce such an agreement to writing adversely affected Wilson. Although a trial judge is free to reject the terms of a plea agreement, Wilson was denied the opportunity to have such an agreement considered and, if such an agreement had been presented to and refused by Judge Griffith, another judge would have tried Wilson's case. Rule 3A:8.

Based on this record, we conclude that Judge Griffith's failure to recuse himself was an abuse of discretion because the record shows that the judge's actions reflected a personal bias and prejudice against Wilson's counsel and raised concerns about the judge's impartiality in the case and about the public's perception of his fairness in the case.[3] Accordingly, although the evidence was sufficient to support conviction of possession of marijuana with intent to distribute, we will reverse the judgment of the Court of Appeals, vacate the judgments of conviction, and remand the

---

[3] In light of our decision, we need not address Wilson's claim that the trial judge erred in refusing to consider the plea agreement, and that such refusal constituted a rejection

case to the Court of Appeals with instructions to remand the matter to the trial court for a new trial, if the Commonwealth be so inclined, before a different judge.

*Reversed and remanded*.

---

of the agreement, thereby requiring a different judge to preside over Wilson's trial pursuant to Rule 3A:8(c)(4).