COURT OF APPEALS OF VIRGINIA


Present:   Judges Haley, Beales and Alston
Argued at Alexandria, Virginia


CHRISTIAN URIAS

MEMORANDUM OPINION[*] BY
v.        Record No. 0828-11-4                JUDGE JAMES W. HALEY, JR.
                                              DECEMBER 13, 2011

WINKLER'S, INC. AND
  AMERICAN HOME ASSURANCE COMPANY


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Diane C.H. McNamara for appellant.

Alex M. Mayfield (John H. Carstens; Jordan Coyne & Savits, LLP,
on brief), for appellees.


I.  INTRODUCTION

Christian Urias appeals two adverse decisions of the Workers' Compensation

Commission.  The first decision terminated his benefits based on a release to pre-injury work.

The second decision denied Urias benefits from a change in condition on the ground that he had

failed to prove adequate marketing of his residual capacity.  Urias argues the commission erred

in (1) failing to find the deputy commissioner should have recused herself for numerous reasons,

including a claim that the commission's procedures regarding recusal do not comport with due

process, (2) holding the evidence supported a release to pre-injury work, (3) determining Urias

failed to adequately market his residual capacity where estoppel principles and a failure to

provide vocational rehabilitation prevent this finding, (4) failing to consider whether the deputy

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

commissioner should have allowed him to use a marketing log at a hearing, and (5) finding the deputy commissioner acted properly in denying him a hearing after a commission remand. We affirm.

## II. BACKGROUND

We recite only those facts necessary to the disposition of this appeal.

Urias sustained a severe work-related injury on July 23, 2007, which required multiple surgeries and temporarily rendered him paraplegic. He was transferred to rehabilitation at Inova Mount Vernon Hospital. In a discharge note on October 10, 2007, it was stated that Urias should soon schedule appointments with Dr. Hymes, Dr. Dwyer, and Dr. Jebraili. He was to see Dr. Ganjei a short time later. Urias then went to another rehabilitation center for further therapy.

Dr. Ganjei evaluated Urias on October 29, 2007, and noted "remarkable progress since his original injury," although Urias continued to experience difficulties. Dr. Ganjei found Urias capable of returning home and continuing rehabilitative therapy on an outpatient basis. Urias was "unable to return to his previous work at this time," but could "participate in a full time sedentary type of work."

On December 3, 2007, Dr. Ganjei again noted "good progress" from therapy. Urias did have problems with urinary incontinence, and Dr. Ganjei advised him to consult a urologist. On January 14, 2008, Dr. Ganjei stated Urias made "steady progress" from participation in a work hardening program and that his urinary incontinence "is resolving." Dr. Ganjei advised him to continue in the work hardening program.

On February 11, 2008, Dr. Ganjei wrote that Urias was "doing well" in the work hardening program. Furthermore, Urias' urinary problems had improved from medication, though Urias was under the care of another physician for those issues. Dr. Ganjei recommended Urias continue with work hardening. Urias' situation had improved still further by March 10,

2008, when Dr. Ganjei said there was "no objective reason that would prevent him from participating in a full-time modified duty work." When Urias saw Dr. Ganjei on May 5, 2008, he had started working part time and reported "no difficulties during the times at work."

On June 23, 2008, Dr. Ganjei stated Urias "had completed his outpatient work hardening program," was "working full time full duty as a welder," and "reports no difficulties performing his full time full duty work." This was in spite of "occasional urinary incontinence." Dr. Ganjei wrote he would "see Mr. Urias on an as needed basis." Dr. Ganjei completed a work status certificate stating Urias could perform normal work, but if there was any doubt an "on the job eval[uation] is indicated."

Throughout the treatment, Dr. Ganjei consistently indicated he reviewed the records from the work hardening program Urias attended.

Urias underwent a functional capacity evaluation on November 15, 2007, to begin the work hardening program. During the testing, Urias showed himself capable of medium level work. It was also noted Urias could have problems "where bathrooms were not readily available." Nonetheless, the prognosis for recovery was favorable: "Prognosis for return to previous full duty work is fair to good, provided there is sufficient improvement . . . to allow him to safely work at heights. It is expected that his independent personality and strong motivation to return to his previous profession will be an asset . . . in the rehabilitation process."

Urias improved during involvement in the program. For instance, on February 11, 2008, it was noted that he performed six hours of work activities and that he "should benefit from continuing the program." On March 3, 2008, it was stated that Urias "continues to demonstrate good potential to meet the job requirement" of his profession. By March 31, 2008, Urias had the ability to work at the heavy level on a frequent basis, though not at a full-time level. On May 26, 2008, Urias reported he thought he would be ready to be released to full duty work on June 23.

This was confirmed on June 16, 2008, when his physical therapist stated Urias "has demonstrated the ability to tolerate return to work as he has reported performing the duties of his previous full-time position . . . and thus he should be discharged from the program and return to work full-time." At discharge on June 20, 2008, Urias was stated to be able to tolerate eight hours per day of heavy work.

Urias returned to work with employer.[1] However, Urias stopped working there in August 2008.

The parties submitted an agreement to pay temporary total disability benefits as a result of Urias' injury, which the commission approved in an award on August 25, 2008. This award was later terminated, and a supplemental award for partial disability was entered on February 9, 2009.

Employer filed an application to terminate benefits on March 4, 2009, alleging Dr. Ganjei released Urias to his pre-injury work on June 23, 2008, and that Urias actually returned to this work on June 24, 2008. The application was referred to Deputy Commissioner Jimese Pendergraft Sherrill.

Urias filed a motion asking the deputy commissioner to recuse herself. The motion stated: "This request is based upon your recent employment with the defense firm." The deputy commissioner denied the motion, finding: "I am confident that I can decide this matter impartially, regardless of my prior affiliation." The deputy commissioner also noted she had been advised to not hear cases from her prior firm for six months after becoming a deputy commissioner. The deputy commissioner remarked that this period "has almost elapsed, and will have elapsed well prior to this matter being heard."

---

[1] We refer to the appellees collectively as "employer."

Urias then filed a motion to certify the February 9, 2009 award pursuant to Code § 65.2-10 based on employer's non-compliance.[2] The deputy commissioner denied the motion, holding there had "been no non-compliance which would justify certification." Urias filed another application for benefits based on a change in condition on June 8, 2009.

On July 10, 2009, Urias filed a motion to compel answers to interrogatories and requests for production. Urias claimed he had received no response to his discovery requests served on June 5, 2009. In response, the deputy commissioner wrote: "Please advise whether you have communicated with counsel for defendants and attempted to resolve this issue. Once I hear back from you, I will rule on your motion." Urias' counsel then contacted defense counsel, who agreed to submit responses shortly thereafter.

The deputy commissioner held an *ore tenus* hearing on July 20, 2009. We address only that evidence relevant to this appeal.

Jeffrey Winkler, a shop foreman for Urias' employer, testified about how Urias returned to full duty work after his medical release. He testified:

> Q. Okay. Did there come a time when he was released to return to work full duty?
>
> A. Yes, there was.
>
> Q. Okay. And did he return to work in his — in a full duty capacity with Winkler's?
>
> A. Yes, he did.
>
> Q. And do you recall when that was?
>
> A. It was approximately around June 24th of '08.

---

[2] Code § 65.2-710 states: "Orders or awards of the Commission may be recorded, enforced, and satisfied as orders or decrees of a circuit court upon certification of such order or award by the Commission. The Commission shall certify such order or award upon satisfactory evidence of noncompliance with the same."

Q. Of 2008. And when he was returned to work in a full duty capacity, what did you have him do?

A. At that time we had a few projects that were down in the Virginia area and we had him report to some of those as helper to assist with finishing up some projects in that area.

Q. Okay. And was he doing the same type of work he would have been doing before the accident?

A. Yes, he did. He performed the same functions, worked with some of the same men that he worked with at Dulles Field. We really didn't have any problems with him.

Q. All right. And did you have occasion to observe him doing that work after he returned to work in a full duty capacity?

A. Yes. I had occasion to watch him as I visited the job site and I had conversations with, you know, our lead personnel and the foreman and all and they said that, you know, Christian's work habits and work performance were acceptable.

Urias sought to introduce an exhibit concerning his search for employment that the deputy commissioner refused admission. During his job search, Urias kept a log of numbers he called. He wrote the numbers down on a paper. When he contacted a person at an office and received negative information, he crossed the number out. When he could not reach a person and had to leave a message, he did not put a mark on the number. This log was admitted without objection. However, the log contained only a small number of business names and no addresses. To supplement this, the office of Urias' counsel called the numbers on the list, identified the relevant businesses and their addresses, and prepared a second log showing this information. The deputy commissioner refused admission to this exhibit and also did not allow counsel to use it to refresh Urias' recollection. The deputy commissioner did accept the exhibit as a proffer.

The deputy commissioner also granted employer permission to depose a doctor within thirty days after the hearing over Urias' objection. Employer eventually chose not to conduct the deposition.

The deputy commissioner issued an opinion on November 18, 2009, finding employer had proven both a medical release to full duty work and a return to full duty work. Importantly, the deputy commissioner determined that while Urias had urinary difficulties, they did not prevent him from performing his work. The deputy commissioner discounted a letter from Dr. Klousia from June 2009 stating that Urias needed to take bathroom breaks during the day. The deputy commissioner terminated Urias' benefits from the February 9, 2009 award and denied his June 8, 2009 change-in-condition application.

Urias appealed to the full commission, challenging the substance of the deputy commissioner's decision as well as her decision not to recuse herself. The commission affirmed the decision on recusal, finding that while the deputy commissioner previously "represented the insurer in other matters, there is absolutely no evidence that she had any direct, personal, substantial, or pecuniary interest in the outcome of this case." The commission also affirmed the decision that Urias received a medical release to full duty work in June 2008, thereby properly resulting in termination of his benefits from the February 9, 2009 award. Nonetheless, regarding Urias' June 8, 2009 change-in-condition application, the commission held Urias had proven work-related limitations from the note by Dr. Klousia from June 22, 2009, stating Urias needed to take frequent restroom breaks. The commission remanded the case to the deputy commissioner for the limited purpose of considering whether Urias adequately marketed his residual capacity beginning on June 22, 2009.

After receiving the remand, the deputy commissioner wrote to the parties to inquire whether another hearing should be held "because such a significant period of time has transpired since the last hearing." Employer's counsel responded a hearing should be held. Counsel also noted Urias had filed another change-in-condition application since the deputy commissioner's decision and it could be proper to hold a hearing on that application at the same time.

Urias' counsel then wrote to the deputy commissioner:

> In the event this matter is not appealed, I cannot agree to an additional hearing to address the issue of claimant's marketing unless you have reconsidered your ruling with respect to whether Mr. Urias' recollection of the names of employers he contacted can be refreshed using the list of employers compiled by my office using his list of telephone numbers. Please reconsider the prior request made at hearing to allow Mr. Urias to refresh his recollection of the places he searched for work with aid of the list prepared by my office.

Urias' counsel sent another letter explaining the basis for asking that the document counsel's office prepared be utilized at a subsequent hearing. However, counsel did not withdraw the statement that she "cannot agree to an additional hearing" unless the deputy commissioner reversed the prior decision excluding the evidence.

The deputy commissioner denied Urias' motion to reconsider the admissibility of the evidence. The deputy commissioner also wrote she intended to decide the case without another hearing in light of Urias' objection. On September 13, 2010, the deputy commissioner issued an opinion denying Urias' claim based on Dr. Klousia's note regarding restroom breaks. The deputy commissioner found the record lacked evidence of marketing efforts during the relevant time period of after June 22, 2009. On September 21, 2010, Urias requested reconsideration of the decision and again asked the deputy commissioner to recuse herself. The deputy commissioner denied both requests. Urias again appealed to the full commission.

On April 5, 2011, the full commission affirmed. The commission again held the deputy commissioner acted properly in declining to recuse herself. Concerning the lack of an additional hearing on remand, the commission determined Urias waived any right to a hearing by stating he would not agree to a hearing unless the deputy commissioner reconsidered her ruling about the exhibit prepared by the office of Urias' counsel. Thus, the commission wrote: "The claimant cannot now claim error on the part of the Deputy Commissioner for her failure to conduct a

hearing to which the claimant objected." Lastly, the commission affirmed the finding that Urias failed to prove adequate marketing of his residual capacity after June 22, 2009, on the same grounds as the deputy commissioner. Urias appeals.

### III. ANALYSIS

#### A. Recusal

Urias argues the deputy commissioner erred in declining to recuse herself and the commission then erred in upholding the decision to not recuse. Urias also asks this Court to adopt broad ethical standards to guide the commission in recusal decisions, essentially asking for the Canons of Judicial Conduct to apply to deputy commissioners. Urias maintains the lack of such standards violates due process.

Rule 5A:18 provides that "[n]o ruling of the . . . Virginia Workers' Compensation Commission will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling." The purpose of this rule "is to ensure that the trial court has an opportunity to rule intelligently on a party's objections and avoid unnecessary mistrials or reversals." Johnson v. Raviotta, 264 Va. 27, 33, 563 S.E.2d 727, 731 (2002). Consequently, an appropriate objection must contain "sufficient specificity that the alleged error can be" addressed. Bazemore v. Commonwealth, 42 Va. App. 203, 218, 590 S.E.2d 602, 609 (2004) (*en banc*) (citation omitted). Moreover, "[m]aking one specific argument on an issue does not preserve a separate legal point on the same issue for review." Edwards v. Commonwealth, 41 Va. App. 752, 760, 589 S.E.2d 444, 448 (2003) (*en banc*).

Under Rule 5A:18, a motion for recusal "must be made when the movant learns the grounds upon which the motion is based; thereafter, the motion comes too late." Judicial Inquiry & Review Comm'n of Va. v. Taylor, 278 Va. 699, 723-24, 685 S.E.2d 51, 66 (2009) (citation omitted).

Urias failed on multiple occasions to ask the commission to adopt the Canons of Judicial Conduct for deputy commissioners. His motion to the deputy commissioner merely stated: "This request is based on your recent employment with the defense firm." Urias' first brief before the full commission acknowledged the Canons "do not technically apply to" deputy commissioners. His recusal analysis did not mention the need for broad standards until the last sentence. The commission interpreted Urias' arguments as only addressing general bias and accordingly tailored its ruling. Urias' second brief before the full commission again stated the Canons do not apply to deputy commissioners. However, at this point Urias made a due process argument that the Canons should apply to deputy commissioners. The commission found "no grounds to alter this determination [about recusal] at this juncture." Thus, it appears the commission declined to consider Urias' due process arguments. This was proper since Urias could have earlier raised these legal arguments. We hold Urias' arguments concerning the Canons of Judicial Conduct not timely presented.[3] Like the commission, we limit our review to arguments of general bias.[4]

In considering the recusal motion, the deputy commissioner was called to use discretion to determine whether she had bias that would deny a fair hearing. Stamper v. Commonwealth, 228 Va. 707, 714, 324 S.E.2d 682, 686 (1985). The deputy commissioner was to "be guided not only by the true state of [her] impartiality, but also by the public perception of [her] fairness, in order that public confidence in the integrity of the judiciary may be maintained." Wilson v.

---

[3] The commission's Rule 3.2 instructed that Urias' brief before the full commission should "address all errors assigned." Urias' first brief obviously did not do this regarding the argument now asserted.

[4] As a result of this holding, we do not consider whether the Canons of Judicial Conduct apply to deputy commissioners.

- 10 -

Commonwealth, 272 Va. 19, 28, 630 S.E.2d 326, 331 (2006). We review only for abuse of discretion. Id.

Urias first argues the deputy commissioner displayed bias by not disclosing a prior business relationship with the employer's current counsel and prior representation of the insurer. Urias' counsel was obviously aware of the deputy commissioner's relationship with the defense firm, which is explicitly mentioned as the ground for his recusal motion to the deputy commissioner. Furthermore, Urias' brief states he learned of the deputy commissioner's role in representing the insurer upon researching public records. We find no error in the deputy commissioner not disclosing what was already known or easily ascertainable, especially in light of the known relationship to the defense firm.

Urias next argues the deputy commissioner should have recused herself because she took actions in the case less than six months after leaving the defense firm. The deputy commissioner wrote that she "was advised" to not hear cases from her old law firm until six months after taking office and that this period "will have elapsed well prior to this matter being heard." We note this "rule" appears to be merely advisory. Even where the Canons of Judicial Conduct are at issue, an apparent "violation of the Canons alone is not enough to mandate recusal." Commonwealth v. Jackson, 267 Va. 226, 229, 590 S.E.2d 518, 519 (2004); see also Scott v. Rutherfoord, 30 Va. App. 176, 190, 516 S.E.2d 225, 232 (1999). We find no bias here.

Third, Urias contends the deputy commissioner showed bias by stating one of his arguments was "disingenuous" in her first written opinion. While Urias argued he did not receive follow-up with other physicians per discharge instructions, the deputy commissioner stated this was "disingenuous" since Urias did not seek additional treatment. While the deputy commissioner's word choice was perhaps less than ideal, we do not believe it rises to the level of

- 11 -

bias. The deputy commissioner could have made the same finding in substance by stating she disagreed with Urias' argument for the same reasons.

Urias' fourth and fifth arguments concerning alleged bias maintain the deputy commissioner showed bias in misconstruing Urias' position after the full commission's remand as waiving the right to an evidentiary hearing, then not holding such a hearing, ruling on the matter, and denying a request for reconsideration. We note Urias separately argues this on the merits as an assignment of error and in this portion we are only concerned with bias. Having reviewed the relevant documents, we find no evidence of bias.

As a sixth claim of bias, Urias argues the deputy commissioner repeatedly denied his requests. Specifically, Urias states the deputy commissioner denied two requests for recusal, a motion to compel overdue discovery, requests to use the exhibit prepared by counsel's office to show job search efforts, a request for reconsideration of the decision not to hold a hearing on remand, and a request for Code § 65.2-710 certification. Meanwhile, Urias points to the deputy commissioner granting a motion to leave the record open to depose a doctor and ruling for employer by denying an additional hearing on remand. In considering the motion to compel discovery, the deputy commissioner inquired whether any attempt had been made to resolve the matter outside the legal process. The Court has reviewed the record pertaining to the supplemental marketing list, the Code § 65.2-710 certification, and the permission to depose a doctor and perceives no bias. The denial of the request for reconsideration not to hold a hearing on remand has been discussed above.

Urias' seventh argument essentially maintains the deputy commissioner made a legal error by inviting the presentation of evidence outside the scope of remand. Again, we do not perceive any bias.

- 12 -

Lastly, Urias argues the deputy commissioner's adverse credibility determinations to him reveal bias. After reviewing the record, these arguments again appear to be simply legal assignments of error, not evidence of bias.

For these reasons, we find no error in the commission's decision that the deputy commissioner's recusal was unnecessary.

## B. Release to Work

Urias argues the commission erred in holding he was released to his pre-injury work because the record lacked a release from all his treating physicians.[5] Urias also contends the commission erred by relying on the opinion of Dr. Ganjei that Urias could work because Dr. Ganjei never actually released him to the prior employment.

In order to terminate an award of benefits based upon a release to work, the injured employee must be "able fully to perform the duties of his preinjury employment." Celanese Fibers Co. v. Johnson, 229 Va. 117, 120, 326 S.E.2d 687, 690 (1985). We review the commission's factual findings only for whether they have support in credible evidence. Ford Motor Co. v. Favinger, 275 Va. 83, 88, 654 S.E.2d 575, 578 (2008).

---

[5] As part of his argument for this assignment of error, Urias contends employer's nurse case manager failed to schedule him with all the physicians he needed to see. Urias' assignment of error states: "The sufficiency of the evidence fails to establish a change in condition where Urias was never fully, unequivocally, and unconditionally released to pre-injury work by all the necessary specialists, and did not return to pre-injury work." According to Rule 5A:20(c), Urias' brief was to contain a "statement of the assignments of error." Assignments of error serve to "point out the errors with reasonable certainty in order to direct [the] court and opposing counsel to the points on which appellant intends to ask a reversal of the judgment, and to limit discussion to these points." Carroll v. Commonwealth, 280 Va. 641, 649, 701 S.E.2d 414, 418 (2010) (citation omitted). Counsel must "lay his finger on the error." Id. (citation omitted). Nonetheless, we may not invoke this rule to prevent consideration of an appeal "without considering whether a party's failure to adhere strictly to the rule's requirements is insignificant." Moore v. Commonwealth, 276 Va. 747, 753, 668 S.E.2d 150, 154 (2008). Applying this standard, it is clear that blaming employer's nurse case manager for failing to schedule appointments falls outside the assignment of error and is a significant non-compliance. Thus, "we will not give further consideration" to such arguments. Carroll, 280 Va. at 649, 701 S.E.2d at 418.

Here, the evidence revealed Urias was capable of returning to his pre-injury work and in fact returned to that employment. Urias' treating physician and physical therapist both released him to full duty work.[6] A shop foreman at Urias' employer testified Urias performed the same work as before the accident. Although Urias argues he was not released because he did not receive a release from several physicians listed in a discharge note, no evidence reveals those physicians ever treated Urias in his rehabilitation preceding his return to work. The commission was "free to adopt that view which is most consistent with reason and justice" and find in favor of employer. Ga.-Pac. Corp. v. Robinson, 32 Va. App. 1, 5, 526 S.E.2d 267, 269 (2000) (citation omitted). Credible evidence supports the commission's determination.

### C. Alleged Waiver of Marketing of Residual Capacity

Urias argues the employer may not claim he did not adequately market his residual capacity because it did not seek to promptly terminate his benefits and because it failed to provide vocational rehabilitation. Our review of the record reveals Urias did not raise his timeliness argument before the full commission. Therefore, he may not raise it before this Court. Rule 5A:18. Regarding the failure to provide vocational rehabilitation, Urias did not raise this argument in his first brief before the full commission. He did argue this in his second written statement after the remand. Findings concerning vocational rehabilitation are factual. United Parcel Serv., Inc. v. Godwin, 14 Va. App. 764, 767, 418 S.E.2d 910, 912 (1992). Since no hearing was held after the remand, the commission made no factual findings. As discussed below, the responsibility for the lack of a second hearing rests with Urias. Thus, we find this does not constitute a basis for reversal.

---

[6] We disagree with Urias' argument that Dr. Ganjei did not actually release him.

- 14 -

### D. Exhibit Exclusion and Denial of Hearing on Remand

Finally, we consider Urias' fourth and fifth assignments of error. Urias argues the commission erred in failing to address whether the deputy commissioner erred in declining to admit the exhibit prepared by his counsel's office concerning marketing efforts. Urias also contends the commission erred in denying him an evidentiary hearing on remand.

It is well established that when a court excludes evidence, a litigant must proffer the evidence to preserve the issue of its exclusion for appeal. Tynes v. Commonwealth, 49 Va. App. 17, 21, 635 S.E.2d 688, 689 (2006). One of the reasons for requiring the proffer is to allow a court to determine whether the exclusion of the evidence constituted harmless error. Ray v. Commonwealth, 55 Va. App. 647, 650, 688 S.E.2d 879, 881 (2010).

It follows from this that if a court excludes a litigant's exhibit before a hearing, the litigant may not simply refuse to participate in the proceedings and yet preserve the issue for appeal. Such an action deprives a reviewing court of the ability to ascertain what other evidence may have been presented and thus whether any error was harmless.

The deputy commissioner's decision to exclude Urias' proffered exhibit did not justify him in threatening to abstain from further proceedings. By declining to participate in a further hearing, Urias waived any review of the exclusion of his exhibit by this Court since we do not know the totality of the evidence the deputy commissioner would have received and so may not conduct a harmless error analysis. Furthermore, by the plain terms of Urias' letter, he waived any right to another hearing.

For the foregoing reasons, the judgment of the commission is affirmed.

Affirmed.