COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Causey, Chaney and Callins
Argued at Hampton, Virginia


DOMINIC JAMES VEALE JR.

                                              MEMORANDUM OPINION* BY
v.        Record No. 1553-23-1                JUDGE DORIS HENDERSON CAUSEY
                                              JUNE 3, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
A. Bonwill Shockley, Judge

(Cole M. Roberts; Law Office of Eric Korslund, P.L.L.C., on briefs),
for appellant.  Appellant submitting on briefs.

C. David Sands, III, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on briefs), for appellee.


Sitting without a jury, the Circuit Court of the City of Virginia Beach convicted Dominic

James Veale Jr. of two counts of violating Code § 18.2-308.2:2(N).  Under that code section,

"[a]ny person who is ineligible to purchase or otherwise receive or possess a firearm in the

Commonwealth" is prohibited from "solicit[ing], employ[ing], or assist[ing] any person" to

purchase a "firearm with the intent to . . . resell or otherwise provide such firearm to any person

who he knows or has reason to believe is ineligible to purchase or otherwise receive from a

dealer a firearm for whatever reason."  Veale was also convicted of one count of reckless driving

and one count of failure to appear.  By final order entered September 15, 2023, the trial court

sentenced Veale to a total of 20 years of incarceration, with 10 years suspended, for the two

firearms offenses.  On appeal, Veale contends that the evidence was insufficient to support one of

his two firearms convictions.  Finding no error, we affirm.

---

*This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND

On appeal, "we review the evidence in the 'light most favorable' to the Commonwealth." *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). That principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc) (quoting *Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998)).

A. The Pre-Trial Investigation

On September 14, 2020, Detective Jachimiak of the Virginia Beach Police Department responded to a reported shooting at Lynnhaven Parkway and recovered a Jeep SUV near First Colonial Road. From inside the Jeep, officers recovered a cellphone. Officers also recovered shell casings and fragments. The cellphone was sent for forensic analysis. Victims of the shooting were taken to a local Virginia Beach hospital.

Detective Jachimiak went to the local hospital. While there, he reviewed the hospital's surveillance footage from that same day. The surveillance footage showed one man, later identified as Keon Jones ("Keon"), disposing of an item in a trash can outside the hospital before walking toward another man, later identified as Dominic Veale ("Veale"), in the parking lot, before the two men walked away together. After reviewing the footage, Detective Jachimiak went to the trash can and recovered a Glock 10mm firearm. The police department performed a trace on the gun, which revealed that the gun had been purchased by Faith Jones ("Faith") at Superior Pawn and Gun on September 2, 2020.

Video surveillance footage from Superior Pawn and Gun, taken on September 2, 2020, showed Faith, Keon, and Veale exiting a car in the store's parking lot. Veale was shown exiting

- 2 -

from the front seat of the vehicle on the driver's side, while Faith and Keon exited on the passenger's side. The video then showed the three entering the store together and looking at merchandise while appearing to communicate with one another. Then, the three were shown leaving the store. Faith was then shown reentering the store alone and, while the men remained outside the store, purchasing a gun. Finally, the video showed Faith getting back into the car and the car driving away. Other evidence from the store included a receipt for a gun purchase dated September 2, 2020, listing Faith Jones as the purchaser of a Glock 10mm firearm, and federal and state firearms purchase background check forms completed by Faith Jones on September 2, 2020.

Additional relevant evidence had been recovered in an earlier investigation by the Virginia Beach Police Department. Sometime prior to September 14, officers investigating an automobile theft had recovered another cellphone from inside a vehicle. The cellphone was recovered along with an ID card belonging to Dominic Veale and a gun box for a Glock 10mm firearm. The phone showed the following text messages, sent on August 31:

> Go get faith she gone get a blick out da sto [sic]
> Get draco
> Ima go half wit yu [sic]

Finally, the phone recovered from the September 2020 crash contained texts showing parties coordinating a separate gun purchase. The texts showed one person requesting that a second person purchase a firearm on June 30, 2020, the second person purchasing the firearm, the parties coordinating pickup of the firearm, and the parties coordinating payment.

Veale was ineligible to purchase a handgun from a federally licensed dealer until October 2020, when he turned twenty-one years old. 18 U.S.C. § 922.[1] The Commonwealth's attorney

---

[1] We note that while Veale was ineligible to purchase a handgun from a licensed dealer, the record does not indicate that Veale was ineligible to possess a handgun, nor does it indicate that Veale was generally ineligible to purchase or possess all firearms in the Commonwealth.

stated, without contradiction, at trial, that Keon was also ineligible to purchase a firearm due to a prior felony, but no evidence of Keon's status appears in the record of this case.[2]

## B. Trial

Veale was charged with two counts of violating Code § 18.2-308.2:2(N), which prohibits one who is "ineligible to purchase or otherwise receive or possess" a firearm from soliciting, employing, or assisting another to purchase a firearm for one whom they have reason to believe is ineligible. Veale was also charged with one count of reckless driving, in a separate incident, and for failure to appear.

One firearms charge concerned the events of June 30, 2020. In support of this charge, which Veale does not challenge on appeal, the Commonwealth's evidence included the text messages extracted from the phone recovered from the Jeep and the testimony of Halle Hazzard, who acknowledged that the texts showed Veale asking her to purchase a weapon and her agreeing to do so on June 30. Hazzard also confirmed that records from Cash App showed Veale's payment for the weapon. Hazzard testified that she bought Veale the weapon, and also testified that she knew that the reason that Veale asked her to purchase the weapon for him was that he was underage.

The second firearms charge, which is the focus of this appeal, concerned the events of September 2, 2020. In support of this charge, the Commonwealth presented the August 31 text messages from a separate phone, the gun trace information showing Faith Jones as the purchaser of the gun that Keon and Veale left in a trash can on September 14, receipts and forms from the

---

Veale does not argue that this status affects the applicability of Code § 18.2-308.2:2(N), which applies to "any person who is ineligible to purchase or otherwise receive or possess a firearm in the Commonwealth," so we will not consider these issues on appeal.

[2] On direct examination, the Commonwealth's attorney asked Faith if she knew "whether or not [Keon] was a felon." Faith replied, "No, I didn't know his status. I know that he was in jail, but I didn't know if he was a felon or not."

- 4 -

pawn shop, the pawn shop's surveillance footage showing Faith, Keon, and Veale on September 2, the testimony of a pawn shop employee who authenticated the receipt and background check forms, and officers' testimony that described the foregoing sequence of events. The Commonwealth also presented the testimony of Faith Jones.

Faith initially denied that she had any contact with Veale in September 2020, but then confirmed that the pawn shop's September 2 surveillance footage showed her going to the gun store with Veale and Keon. Faith testified that Veale drove her and Keon to the gun store and drove them back afterwards. Faith stated that she was not sure whose money she used to purchase the gun, but it was not her money. She also stated that she did not have the money prior to being picked up by Veale and Keon that day. Faith confirmed that she purchased a gun while Veale and Keon were in the car. She stated that she paid in cash.

Faith stated that Keon, not Veale, had asked her to get the gun. She stated that she had known Keon better than she knew Veale. She stated that she did not know whom the gun was for, but that it was not for her. Faith said that when she brought the gun back to the car, she placed it in the center console and left it in the car when she was dropped off. On cross-examination, defense counsel attempted to impeach Faith with her prior statements to a detective that she had purchased the weapon to protect herself. Faith responded that she did not remember what she had told the detective. But she testified that she did remember the detective telling her that she was lying, and she acknowledged that she had lied to the detective. Faith stated that she had not known whether Keon was a felon, although "I know that he was in jail."

At trial,[3] Veale was convicted for two violations of Code § 18.2-308.2:2(N). Veale was also convicted of one count of reckless driving, and for one count of failure to appear. Veale

_____

[3] The panel requested briefing by the parties on the issue of the trial judge's decision not to recuse herself after receiving certain limited information about Veale's prior intent to accept a plea agreement. After review, we hold that this Court is barred from considering the issue

- 5 -

timely appealed his two firearms convictions, but he assigned error only to the conviction for his

alleged actions on September 2, 2020.  In his assignment of error, Veale states that the trial

court's conviction[4] was in error "because the evidence was insufficient to prove the appellant

solicited, employed or assisted another person in relation to the purchase or receipt of a firearm

from a dealer."

ANALYSIS

Veale argues that the evidence was insufficient to show that he violated Code

§ 18.2-308.2:2(N) in relation to the purchase of a Glock 10mm firearm on September 2, 2020.

---

because Veale did not assign error to this issue, nor did he object to the trial judge's non-recusal with reasonable certainty at trial.  *See Agnew v. United Leasing Corp.*, 80 Va. App. 612, 622 (2024); Rule 5A:18.

Additionally, we note that the record available to us in this case does not indicate that the judge was required to recuse herself.  It indicates that the judge was informed that Veale previously intended to accept a plea deal but decided not to do so because the agreement "keeps bringing gang activity into it."  This information would not trigger the recusal requirements of Rule 3A:8(b)(6), which apply following a judge's rejection of certain plea deals or the Commonwealth's non-performance of certain plea-related duties.  Nor would the reference to gang activity, in the absence of any evidence of partiality, be sufficient to show that the trial judge committed an "abuse of discretion" in determining that the judge was capable of giving Veale a fair trial.  *See Wilson v. Commonwealth*, 272 Va. 19, 28 (2006); *Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011).

[4] The panel also requested briefing on certain errors apparent on the face of the sentencing order in this case.  After review, we find that these discrepancies qualify as scrivener's errors, not requiring reversal.  The language of the sentencing order indicates that Veale was convicted of one violation of Code § 18.2-308.2:2(N) and a separate violation of Code § 18.2-308.2:2(M), covering the actual illicit *purchase* of a firearm, rather than assistance in that purchase.  But the record of this case shows that Veale's indictments—though also erroneously referring to the two separate offenses—put him on notice, through detailed descriptions of the conduct with which he was charged, that he was being charged with two counts of soliciting or assisting in another's illicit purchase, per Code § 18.2-308.2:2(N), that Veale was arraigned for two counts of that charge, that both parties' arguments focused only on that charge, and that the evidence only showed Veale's solicitation or assistance in firearm purchases, not his own purchases.  Because the sentencing order's statement is contradicted by the record of this case, it would qualify as a scrivener's error, not requiring reversal.  *See Sechrist v. Commonwealth*, 81 Va. App. 196, 207 (2024).  Therefore, we will remand the case solely for the purpose of correcting the clerical errors in Veale's sentencing order.  Code § 8.01-428.  *See Khine v. Commonwealth*, 82 Va. App. 530, 550 n.6 (2024).

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

Additionally, this Court affords significant deference to a factfinder's determinations as to witness credibility. "The sole responsibility to determine the credibility of witnesses, the weight to be given to their testimony, and the inferences to be drawn from proven facts lies with the fact finder." *Blankenship v. Commonwealth*, 71 Va. App. 608, 619 (2020) (quoting *Ragland v. Commonwealth*, 67 Va. App. 519, 529-30 (2017)). So, "the conclusions of the fact finder on issues of witness credibility may be disturbed on appeal only when we find that the witness' testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" *Ashby v. Commonwealth*, 33 Va. App. 540, 548 (2000) (quoting *Fisher v. Commonwealth*, 228 Va. 296, 299-300 (1984)). "In all other cases, we must defer to the conclusions of 'the fact finder[,] who has the opportunity of seeing and hearing the witnesses.'" *Id.* (alteration in original) (quoting *Schneider v. Commonwealth*, 230 Va. 379, 382 (1985)).

Subsection N of Code § 18.2-308.2:2 applies to "any person who is ineligible to purchase or otherwise receive or possess a firearm in the Commonwealth who solicits, employs, or assists any person in violating subsection M" of Code § 18.2-308.2:2.  Subsection M prohibits, in relevant part, "[a]ny person['s] . . . purchase[] [of] a firearm with the intent to . . . resell or otherwise provide such firearm to any person who he knows or has reason to believe is ineligible to purchase or otherwise receive from a dealer a firearm for whatever reason."  Code § 18.2-308.2:2 defines "dealer" as any dealer federally licensed under 18 U.S.C. § 921 et seq.  Thus, as relevant here, the statute bars a person who is ineligible to purchase or otherwise receive or possess a firearm from *assisting* another person in purchasing a firearm for a person whom the purchaser has reason to believe is ineligible to obtain it from a federally licensed dealer.

Veale argues that the evidence was insufficient to show that he solicited, employed, or assisted Faith's purchase of the gun for an ineligible person for three reasons: First, because Faith testified that Keon had asked her to purchase the gun; second, because there was insufficient evidence that Veale had provided her with money to purchase the gun; and third, because there was insufficient evidence that Veale knew the purpose of their trip to the pawn shop when he drove the parties to and from the shop.  After reviewing the evidence, we disagree.  We cannot say that no rational factfinder could have concluded beyond a reasonable doubt that Veale assisted in Faith's purchase of a firearm for an ineligible person.  *See Vasquez*, 291 Va. at 248.  All the evidence before the judge, in the aggregate, was sufficient to support the conclusion that Veale drove Faith and Keon to the store with knowledge that by doing so, he was assisting in Faith's purchase of a gun for an ineligible person.

The pawn shop security video and Faith's testimony both confirm that Veale drove the parties to and from the store on September 2.  The pawn shop security video also shows that Veale and Keon entered the store together and viewed merchandise while appearing to

- 8 -

communicate with one another. The video then shows that the three left together and got in the car together and that Faith then went back in the store alone to purchase a weapon. The video shows that Faith then went back in the same car and was driven away. From a review of this recorded sequence of events, including Veale's driving, his participation in the review of items in the store prior to the gun's purchase, and his and Keon's apparent communication with Faith before her purchase, a reasonable factfinder could have concluded that Veale knew the purpose of the trip when he drove Keon and Faith to the store, as opposed to being surprised by Faith's purchase of the gun.

Faith's testimony provided further evidence from which a reasonable factfinder could have inferred Veale's knowledge. Faith testified that she obtained the money to purchase the gun sometime after Veale picked her up and brought her and Keon to the store, where she purchased a gun. Without further elaboration or any contradiction, this evidence logically indicated that either Keon or Veale had given Faith the money while they were in the car—an action that would have taken place in Veale's presence.

Additionally, Faith testified that she placed the gun in the center console of the car after the purchase while Veale was driving. Though not directly indicative of Veale's knowledge prior to the purchase, a reasonable factfinder could have considered the gun's close proximity to Veale immediately after its purchase, among the other factors already mentioned, in assessing the likelihood that Veale was involved in coordinating its initial purchase.

Finally, the August 31 text messages are further evidence that a reasonable factfinder could have considered indicative of Veale's knowledge. While Veale was neither seen with the phone, nor admitted possessing the phone, there were several pieces of strong circumstantial evidence indicating that the phone belonged to Veale. First among these was the phone's discovery in a vehicle along with Veale's identification. Additionally, the messages show one

person telling another person to pick up a person named Faith so that she can purchase a gun from the store, which was sent two days before Veale did drive with Keon and Faith to a store so that Faith could purchase a firearm. Third, a gun box was discovered in the car where the phone was found that corresponded to the type of firearm that was later purchased by Faith Jones. And, as there was sufficient evidence to support the inference that the phone belonged to Veale, the messages on the phone constituted additional evidence of Veale's knowledge of the purpose for the trio's trip to the store. Both the sender and the recipient of the relevant text messages knew that the purpose of picking up Faith was for her to purchase a firearm.

Of note, the Commonwealth appears to suggest that the messages were sent by Veale despite their appearing on the left side of the message screen. This fact was not addressed by either party on brief. However, it is inapposite—if the messages were received by Veale, that would merely indicate that Keon initiated the transaction and that Veale was asked to drive Faith for the clear purpose of purchasing a gun. Either way, Veale's knowledge is clear.

Finally, the statute also requires that Faith, the purchaser being assisted, have had "reason to believe" that the person for whom she purchased the weapon was ineligible to purchase or otherwise receive from a dealer a firearm. Code § 18.2-308.2:2(M). At trial, unrebutted testimony established that Veale was ineligible to purchase the handgun due to his age. Additionally, the combined video and testimonial evidence, viewed in the light most favorable to the Commonwealth, showed that Veale and Keon arranged to pick Faith up for her to purchase the gun for one or both of them, that they provided Faith with cash to purchase it while in the car, that they accompanied her into the store to view merchandise before returning to their car with Faith, that Faith subsequently returned to the store alone and purchased the gun outside their presence, and that Faith left the gun in the car in the center console next to Veale. Cumulatively, this evidence was sufficient for a factfinder to conclude beyond a reasonable doubt that Faith had

reason to believe that she was purchasing the handgun for someone who was ineligible to purchase or otherwise receive it from a dealer.

CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed. We remand this matter to the trial court for the limited purpose of correcting the clerical error on the sentencing order, noted *supra*.

*Affirmed and remanded.*