Present: Hassell, C.J., Koontz, Kinser, Lemons, Agee, and
Goodwyn, JJ., and Carrico, S.J.

JAYSON FRANKLIN MAXWELL

                                        OPINION BY
v.  Record No. 070831        SENIOR JUSTICE HARRY L. CARRICO
                                      February 29, 2008
COMMONWEALTH OF VIRGINIA

            FROM THE COURT OF APPEALS OF VIRGINIA

     In a jury trial, the defendant, Jayson Franklin Maxwell,

was convicted of possession of cocaine with intent to

distribute, third or subsequent offense, in violation of Code

§ 18.2-248, and possession of marijuana, in violation of Code

§ 18.2-250.1.  The jury fixed the defendant's punishment at

seven years in the penitentiary on the cocaine charge and thirty

days in jail on the marijuana charge.  The trial court imposed

the sentences fixed by the jury and also imposed an additional

one-year term suspended subject to post-release supervision

pursuant to Code § 19.2-295.2.

     In an unpublished opinion, a three-judge panel of the Court

of Appeals, with one judge dissenting, reversed the defendant's

convictions.  Maxwell v. Commonwealth, Record No. 2648-05-2

(Nov. 21, 2006).  Upon rehearing en banc, a majority of the

court vacated the panel's mandate and, by order, affirmed the

trial court's judgment for the reasons stated in the panel's

dissenting opinion.  Maxwell v. Commonwealth, Record No. 2648-

05-2 (Apr. 3, 2007).  We awarded the defendant this appeal.

1

## FACTUAL BACKGROUND

Approximately 11:00 a.m. on March 25, 2003, Officer Bill Hogan of the Farmville Police Department, wearing plain clothes but displaying a badge, a sidearm, and handcuffs, drove in his unmarked vehicle to the Farmville Shopping Center, where, he had been told, he would find the defendant. Upon arrival at the shopping center, he found the defendant standing in front of "The Gym." Officer Hogan told the defendant he wanted to talk to him about a check, and the two conversed briefly about that subject.

The defendant had his hands "down the front of his pants, not in his pockets, but actually down the front of his pants." Concerned about "officer safety," Officer Hogan asked the defendant to remove his hands from his pants. When the defendant refused to respond to the request, Officer Hogan told the defendant that they "needed to go to the police department and talk about" the check matter and that he, Hogan, "needed to check [the defendant] to see if he had anything on him, to pat him down." The defendant backed up and said several times, "I ain't got nothing on me," whereupon, "[h]e ran."

Officer Hogan pursued the defendant on foot for a short distance and then returned to his vehicle and drove down an alley behind the shopping center that bordered a lumberyard. He observed the defendant walk out from behind several stacks of

plywood located between the alley and a chain-link fence that enclosed the lumberyard. Officer Hogan took the defendant into custody, put handcuffs on him, and placed him in the vehicle of State Trooper Sean Givens, who had responded to a call to report to the scene. The officers found $460.00 in cash on the defendant's person, but no smoking device.

Officer Hogan conducted a search of the area. When he found nothing, he called for a "drug dog," and Robert Leon Goldman, a "K-9 officer," reported to the scene with his dog, Lily, about 11:15 a.m. Lily "alerted on" a lumber pallet and Goldman "reached in and got . . . a plastic bag" that contained "eight individually wrapped off-white rocklike substances." Subsequent analysis determined that the rocklike substances in the plastic bag were crack cocaine.

Trooper Givens conversed with the defendant while the search was underway. At first, the defendant was "talkative and cooperative" but became "less talkative and distant" after the plastic bag was found. The trooper then transported the defendant to the police department for processing.

Coy R. Sams, an employee of the lumberyard, testified that he unloaded fourteen units of plywood from a tractor-trailer about 8:30 a.m. on March 25, 2003, and placed the stacks of plywood alongside the alley outside the fence that enclosed the lumberyard. Sams also said he spent the rest of the morning

3

"going in and out of the warehouse and back and forth to the yard to retrieve products and materials for customers" and saw no one near the stacks of plywood. He admitted, however, that he was not "outside guarding the plywood the entire morning."

Another lumberyard employee, Mac Robinson, Jr., testified that he and three to six other employees were around the warehouse and yard on March 25, 2003, filling orders for customers and that he saw no one near the plywood stacks all morning, although he was not near the stacks the entire time. Later in the day, Robinson used a forklift to move the stacks of plywood inside the fence where materials were "stored and secured." He testified that after moving "the top" of one of the units, he returned "to pick the bottom unit up" and saw "two bags of stuff" on top of the plywood. He reported his find to Coy Sams and immediately went "back out and sat on the forklift . . . until authorities came."

Officer Hogan arrived on the scene at 1:45 p.m. and took possession of the two bags. Subsequent analysis determined that one bag contained twelve individually wrapped bags of crack cocaine and the other bag contained marijuana.

A single latent fingerprint was found on the bag containing crack cocaine but subsequent analysis determined that it did not match the defendant's fingerprints. A fingerprint expert testifying for the Commonwealth said "circumstances have to be

4

just right for a print to be left on a particular surface" and "not everything that is touched can . . . develop a print." Fingerprints are "very fragile in nature," he stated, and may be destroyed "if you were to just wipe across [it] or if it comes into contact with your clothing or another item." He also opined that "because there is no print of someone's on [an object] doesn't mean that person didn't touch it."

At the conclusion of the Commonwealth's evidence and at the conclusion of all the evidence, the defendant moved to strike the evidence on the ground it was insufficient to show he possessed the drugs. The trial court denied both motions.

The defendant argues on appeal that the evidence was insufficient as a matter of law to show he possessed the drugs in question. The defendant contends that the Commonwealth's case is based on circumstantial evidence, that the chain of circumstances is not unbroken, and that the evidence therefore is equally susceptible to an interpretation consistent with his innocence.

The Commonwealth responds that it was not required to prove actual possession of the drugs, but that proof of the defendant's constructive possession was sufficient. The Commonwealth maintains that from the reasonable inferences which could be drawn from the facts, the jury could conclude that "the defendant was concealing the drugs at the time of his initial

encounter with Officer Hogan, that [the defendant] fled from the officer to prevent the detection of the drugs, and that the defendant ran to the stacks of plywood in an effort to discard the contraband rather than risk its being found in his possession."

STANDARD OF REVIEW

"We have held in many cases that, upon appellate review, the evidence and all reasonable inferences flowing therefrom must be viewed in the light most favorable to the prevailing party in the trial court." Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003). "The judgment of the trial court is presumed to be correct and will be reversed only upon a showing that it is plainly wrong or without evidence to support it." Viney v. Commonwealth, 269 Va. 296, 299, 609 S.E.2d 26, 28 (2005) (internal quotation marks and citation omitted). The issue upon appellate review is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).

"To support a conviction based upon constructive possession [of drugs], the Commonwealth must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of

6

both the presence and character of the substance and that it was subject to his dominion and control." Drew v. Commonwealth, 230 Va. 471, 473, 338 S.E.2d 844, 845 (1986) (internal quotation marks and citation omitted). When, as here, proof of constructive possession rests upon circumstantial evidence, "all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence." Garland v. Commonwealth, 225 Va. 182, 184, 300 S.E.2d 783, 784 (1983) (internal quotation marks and citation omitted). And "[w]hile a conviction may properly be based upon circumstantial evidence, . . . [t]here must be an unbroken chain of circumstances proving the guilt of the accused to the exclusion of any other rational hypothesis and to a moral certainty." Gordon v. Commonwealth, 212 Va. 298, 300, 183 S.E.2d 735, 737 (1971) (internal quotation marks and citation omitted).

### ANALYSIS

Guided by the foregoing principles and after viewing the evidence in the light most favorable to the Commonwealth, we are of opinion that no "rational trier of fact could have found the essential elements of the crime[s involved in this case] beyond a reasonable doubt." See Jackson, 443 U.S. at 319. The circumstantial evidence that the defendant kept his hands in his pants when initially contacted by Officer Hogan, ran from the

7

scene when Hogan said he needed to pat him down, was seen walking between the stacks of plywood and the fence enclosing the lumber yard, and became less talkative and distant when drugs were found, may create suspicion, but it is not "consistent with guilt and inconsistent with innocence and [does not] exclude every reasonable hypothesis of innocence." See Garland, 225 Va. at 184, 300 S.E.2d at 784. Nor does it constitute "evidence of acts, statements, or conduct . . . or other facts or circumstances which tend to show that the defendant was aware of both the presence and character of the substance[s] and that [they were] subject to his dominion and control." See Drew, 230 Va. at 473, 338 S.E.2d at 845. And it does not establish "an unbroken chain of circumstances proving the guilt of the [defendant]." See Gordon, 212 Va. at 300, 183 S.E.2d at 737.

When Officer Hogan observed the defendant with his hands in his pants and told him he needed to pat him down, it was not because the officer thought the defendant was hiding drugs but because he feared the defendant might be concealing a weapon; Hogan testified he wanted the pat down for "officer safety." When the defendant ran from Hogan, it could just as well have been because he did not want to be questioned further about the check matter rather than because he wanted to avoid being caught in possession of drugs. When he was seen walking between the

8

stacks of plywood and the fence enclosing the lumberyard, he had nothing in his hands and was not acting furtively. And there is nothing especially incriminating in the circumstance that he became less talkative and distant when the first bag of drugs was found; indeed, it would have been surprising if his attitude had not changed upon that happening.

Nor is the Commonwealth's case enhanced by the testimony of the two lumberyard employees that they saw no one around the stacks of plywood on the morning of March 25, 2003. They admitted they did not keep constant surveillance; indeed, neither one claimed to have seen the defendant when he obviously was present on the scene. Furthermore, the plywood was stacked in an unfenced area open to the public, along an alley available to vehicular and pedestrian traffic and serving as access to dwellings and commercial buildings, providing a situation in which anyone so inclined could readily have placed the drugs in the stacks of plywood undetected and, so far as the evidence is concerned, even before the defendant ever arrived on the scene.

While the defendant's conduct may have been suspicious, no one ever saw him with the drugs, he never made any incriminating statements concerning the drugs, and the one fingerprint found on the plastic bag containing twelve rocks of crack cocaine was not his but someone else's. All the Commonwealth is really left with, therefore, is evidence that the defendant was seen near

9

the stacks of plywood where the drugs were found.  But it was not shown that he was ever in such close proximity as would support a finding that he was aware of both the presence and the character of the drugs and that they were subject to his dominion and control.  In any event, while proximity is a factor to be considered along with other evidence, mere proximity is not sufficient to prove possession, see Lane v. Commonwealth, 223 Va. 713, 716, 292 S.E.2d 358, 360 (1982), and the utter lack of any other evidence connecting the defendant to the drugs creates a wide gap in the chain of circumstances that is fatal to the Commonwealth's case.

### CONCLUSION

For the foregoing reasons, we will reverse the judgment of the Court of Appeals and dismiss both indictments against the defendant.

Reversed and dismissed.

JUSTICE LEMONS, with whom JUSTICE KINSER joins, dissenting.

I respectfully dissent.

"The issue upon appellate review is . . . whether a reasonable jury, upon consideration of all the evidence, could have rejected" defendant's theories and found him guilty beyond a reasonable doubt.  Commonwealth v. Hudson, 265 Va. 505, 513, 578 S.E.2d 781, 785 (2003).  The question is not whether we would reach the same conclusion, but whether the evidence is

sufficient for the trier of fact to have so concluded.  As the majority correctly notes, "this Court reviews the evidence in the light most favorable to the prevailing party at trial and considers any reasonable inferences from the facts proved.  The judgment of the trial court will only be reversed upon a showing that it 'is plainly wrong or without evidence to support it.' " Wilson v. Commonwealth, 272 Va. 19, 27, 630 S.E.2d 326, 330 (2006) (quoting Code § 8.01-680).

Although there was no direct evidence of Jayson Maxwell's ("Maxwell") possession of the drugs, constructive possession may be proved by circumstantial evidence, which is not viewed in isolation.  Hudson, 265 Va. at 514, 578 S.E.2d at 786. "[T]he combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion."  Id. (internal quotation marks and citation omitted).  The jury heard all of the evidence in this case and found Maxwell guilty beyond a reasonable doubt.

The jury heard evidence that while questioning Maxwell "about another matter, about a check," Officer Hogan observed Maxwell's hands not in his pockets but "down the front of his pants."  When Officer Hogan asked Maxwell to remove his hands, he refused.  Maxwell then repeatedly stated "I ain't got nothing on me."  Officer Hogan mentioned taking him to the station to discuss the check matter and patting him down.  Upon hearing

11

this, Maxwell ran.  The jury heard testimony that the next time Officer Hogan observed Maxwell, he was walking out from behind several stacks of plywood.  This time, when approached by Officer Hogan, Maxwell did not run.  In fact, he was talkative and cooperative.

A "drug dog" was called to the lumberyard, and "alerted" on a bag later determined to contain crack cocaine in the lumber pallets that Maxwell had been walking behind.  Maxwell became less talkative with Officer Hogan after the bag was found. Later in the day two more bags were found under the pallets, one contained cocaine, the other contained marijuana.  The pallets in question had been placed there at 8:30 the same morning. Maxwell ran behind the freshly placed pallets at some time shortly after 11 a.m.  Two lumberyard employees testified that although they did not keep constant surveillance and guard the plywood, both were back and forth between the warehouse and the yard all morning and they saw no one else near the plywood stacks.  Additionally, while Maxwell's fingerprints were not found on the bag, a fingerprint expert explained to the jury that fingerprints are easily destroyed, and would likely be destroyed when the bag was removed from Maxwell's pants.

Proper deference must be given to the province of the jury to consider the testimony, assess the credibility of the witnesses and reject or accept the defendant's theories.

12

Hudson, 265 Va. at 514, 578 S.E.2d at 786. The jury could have concluded that Maxwell was in possession of the drugs when approached by Officer Hogan, and that because of this he would not show the officer his hands and fled upon mention of a pat-down. Maxwell ran to the exact spot where the drugs were subsequently found. The jury could have considered the testimony of the lumberyard employees that nobody was seen around the lumberyard, and interpreted Maxwell's subsequent actions of walking calmly out from behind lumber pallets where the drugs were found and his change in demeanor once the drugs were found, as circumstantial evidence of his knowledge of the nature and character of the substance found. Taken together, the evidence in this case was sufficient to support the jury's finding. I would affirm the judgment of the Court of Appeals.

13