COURT OF APPEALS OF VIRGINIA

Present:   Judges Elder, Beales and Powell
Argued at Alexandria, Virginia


JOANN WILLIAMS

            MEMORANDUM OPINION[*] BY
v.  Record No. 1926-08-4   JUDGE RANDOLPH A. BEALES
             SEPTEMBER 15, 2009

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Richard B. Potter, Judge

John F. Carroll (Carroll & Carroll, P.C., on brief), for appellant.

Michael T. Judge, Senior Assistant Attorney General (Robert F.
McDonnell, Attorney General[1]; Steven W. Grist, Assistant Attorney
General, on brief), for appellee.


Joann Williams (appellant) was convicted of felony neglect of an incapacitated adult, in

violation of Code § 18.2-369(B).[2]  Appellant argues on appeal that the evidence was insufficient

to prove beyond a reasonable doubt that she was a responsible person under Code § 18.2-369 and

that she neglected the victim.  For the following reasons, we disagree with appellant's argument

and affirm her conviction.

I. BACKGROUND

On August 21, 2003, shortly before 4:00 p.m., paramedics entered the apartment of C.F.,

a 55-year-old paranoid schizophrenic who suffered from several serious medical conditions,

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] This brief was filed shortly before Attorney General McDonnell left office.

[2] Appellant was also charged with one count of obtaining money by false pretenses, in
violation of Code § 18.2-178, and five counts of making a false statement in an application for
payment, in violation of Code § 32.1-314.  Appellant was not convicted of any of these charges.

including amyotrophic lateral sclerosis (ALS or Lou Gehrig's Disease). The apartment smelled of cat urine, and there were at least ten piles of cat feces on the floor. The kitchen was full of trash and dirty dishes, and the apartment "was infested with flies." According to one responding paramedic, C.F.'s apartment was "very unsanitary."

The paramedics found C.F. alone, sitting in a recliner with his head cocked to one side and with his tongue hanging out. His shirt was saturated with drool, and his shorts were soaked with urine. His swollen legs were "weeping" interstitial fluid. There were open, untreated sores on C.F.'s legs. He did not appear to have been cleaned or bathed recently. Pictures of C.F., taken August 21, 2003, were introduced at trial.

The paramedics peeled C.F.'s white socks – which had turned black, brown, and green due to the interstitial fluid – off his feet. Maggots fell out of both socks. Hundreds of maggots were present on each foot, either in his socks or between his toes and under his skin.

The paramedics transported C.F. to the hospital, but he required thirty to forty-five minutes of decontamination before he was admitted into the emergency room for treatment. Dr. Siamak Heydarian, his regular treating physician, then observed multiple wounds on his extremities, including a stage-three decubitis ulcer, i.e., a bed sore. Wounds on C.F.'s buttocks and feet were infected with staphylococcus aureusstaph, i.e., a staph infection. C.F. was placed on intravenous antibiotics and was admitted to the hospital. The doctor "had to put a gastric tube in because [C.F.] wasn't able to swallow or chew," and the doctor expressed concern about how he had been able to eat. C.F. remained in the hospital for seven days.

Appellant was C.F.'s home health aide, employed by Sierra Home Health Care ("Sierra"). Appellant's responsibilities as a home health aide included "light house cleaning, toileting, preparing meals, [and] bathing" the person under her care. Appellant generally stayed with C.F. five days per week, Monday through Friday, for five hours each day. Appellant was

assigned to care for C.F. from June 2003 through August 2003. With the exception of one weekend, C.F. was appellant's only home health care client during this time.

In 2005, a Medicare fraud investigator interviewed appellant. The investigator testified at trial that appellant informed him that she was in C.F.'s apartment on August 21, 2003, prior to the paramedics' arrival. Appellant told the investigator that she arrived at the apartment at approximately 9:00 a.m. She said she cleaned up C.F. and, at his request, purchased some ice cream from a convenience store. Appellant said that she left the apartment at 1:00 p.m., approximately three hours prior to the paramedics' arrival, believing C.F. was fine. She never considered calling 911 to report his condition, even though she had noticed that his feet were "oozing and bleeding" and she believed that C.F. might have suffered a stroke sometime in August 2003.

Dr. Heydarian testified that C.F.'s condition upon arrival at the hospital on August 21, 2003, was inconsistent with someone who had been regularly bathed, changed, or moved. In his expert opinion, the bed sore had been developing for one to two months prior to August 21, 2003. Furthermore, an expert in wound morphology testified that C.F.'s feet were likely infested with maggots for a minimum of four to seven days prior to August 21, 2003. Dr. Heydarian testified that C.F.'s foot infection and bed sore posed significant threats to his health, adding that the staph infection could be life threatening if left untreated.

The trial court denied appellant's motion to strike and her renewed motion to strike. The court subsequently found her guilty under Code § 18.2-369(B). This appeal followed.

## II. ANALYSIS

At the time of the offense here, Code § 18.2-369(B) provided, "Any *responsible person* who abuses or *neglects* an incapacitated adult in violation of this section and the abuse or neglect results in serious bodily injury or disease to the incapacitated adult shall be guilty of a Class 6

felony." (Emphasis added.) Appellant argues that the evidence was insufficient to prove beyond a reasonable doubt that she was a responsible person and that she neglected C.F. We disagree.

When considering the sufficiency of the evidence on appeal, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004), "[w]e must instead ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" Crowder, 41 Va. App. at 663, 588 S.E.2d at 387 (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*)). See also Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.

## A. RESPONSIBLE PERSON

Appellant argues that she was not a "responsible person" under Code § 18.2-369 because, she claims, the Commonwealth was required to prove a relationship between herself and C.F. that was "created either through court order, through family relationship or through some other means." Appellant refers to Correll v. Commonwealth, 269 Va. 3, 607 S.E.2d 110 (2005), as support for this argument. The defendant in Correll, who was convicted of felony neglect of her mother under Code § 18.2-369, had been appointed by a circuit court as the legal guardian for her mother prior to the commission of the felony neglect offense. Id. at 6, 607 S.E.2d at 120. From this relationship in Correll, appellant extrapolates that all "responsible person[s]" under

- 4 -

Code § 18.2-369 must have a similar familial or legally mandated relationship with their victims to be convicted under this statute.

Appellant's argument ignores the plain language of Code § 18.2-369. Under this statute, a "responsible person" is "a person who has responsibility for the care, custody or control of an incapacitated person by operation of law *or who has assumed such responsibility voluntarily, by contract or in fact*." Code § 18.2-369(C) (emphasis added). This language does not require a familial or judicially sanctioned relationship. Instead, the plain language of Code § 18.2-369(C) defines a "responsible person" as someone who has the responsibility to care for another, either because legal principles create that responsibility or because the person voluntarily accepted that responsibility via a contract or simply by acting in a manner that acknowledged such responsibility. See Sadler v. Commonwealth, 276 Va. 762, 765, 667 S.E.2d 783, 785 (2008) (noting that an interpretation of a criminal statute should not "impose[] a limitation on the plain meaning of the words used in the statute"). Appellant herself essentially acknowledges this reading of the statute when she argues that the responsibility must be "created either through court order, through family relationship *or through some other means*." (Emphasis added.)

Here, the record is quite clear that appellant – C.F.'s home health aide – had a sufficient relationship with him "by contract or in fact" through her employment with Sierra to make her a "responsible person" under Code § 18.2-369. By her own admission to the investigator, appellant acknowledged that she cared for C.F. In addition, the record contains five "aide sheets" that appellant submitted to Sierra during the time she was assigned to care for C.F. On these weekly aide sheets, appellant indicated the services that she allegedly provided for C.F., including "Bath," "Personal Grooming," preparing meals, and cleaning the kitchen. She also included a brief commentary on his condition each week. She and C.F. apparently signed the aide sheets at the end of the week, and appellant then returned these sheets to Sierra as a

condition of her employment. The last one was signed on August 16, 2003. The record also contains paychecks issued by Sierra to appellant for her services as C.F.'s home health aide, as well as a W-2 tax form that covered the relevant time period. Based on this record, the Commonwealth clearly established that appellant accepted Sierra's offer to employ her as C.F.'s home health aide and, moreover, that she accepted compensation for the care that she claimed to provide. Appellant, by accepting this employment, assumed responsibility for the "care, custody or control" of C.F. "by contract or in fact," making her a "responsible person" under Code § 18.2-369(C).

Nevertheless, appellant argues that she, as an "$8 per hour care worker, who was not a health care provider," was not the "responsible person" in this case, although she admits that she was the "only person available [who] had contact" with C.F. Instead, she contends that the registered nurse who oversaw her work for Sierra, the social worker for the Prince William County Department of Mental Health, and the "point of contact" person for home health care services were the responsible persons. We express no opinion concerning this contention. "*Any* responsible person who abuses or neglects an incapacitated adult" is criminally culpable under Code § 18.2-369(B). (Emphasis added.) Whether or not there were other individuals responsible for C.F.'s care, custody, or control – people who may or may not have neglected him – it is clear that appellant was *a* responsible person under the plain language of the statute.

### B. NEGLECT

Appellant also argues that the evidence was insufficient to prove that she neglected C.F., and, therefore, the trial court erred in convicting her of violating Code § 18.2-369. We disagree with appellant.

Under Code § 18.2-369(C), "neglect" is "the knowing and willful failure by a responsible person to provide treatment, care, goods or services which results in injury to the health or

- 6 -

endangers the safety of an incapacitated adult." The word "willful," in the context of Code § 18.2-369, "contemplates an intentional, purposeful act or omission in the care of an incapacitated adult by one responsible for that adult's care." Correll, 269 Va. at 13, 607 S.E.2d at 124.

Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party below, the evidence adduced at trial proved appellant neglected C.F. The paramedics found C.F. in his "unsanitary" apartment and in a deplorable physical state on the afternoon of August 21, 2003. His clothing was soaked with urine and drool. Bodily fluid was "weeping" down his legs. Maggots had infested C.F.'s feet and toes, and these parasitic insects had been present on his body for at least four days. C.F. had developed a stage-three bed sore, which had been developing for at least a month. If appellant had washed and cared for C.F., as she indicated that she did on the aide sheets, he would not have been in this condition.

Appellant claimed that she was in C.F.'s apartment in the morning and early afternoon of the same day when the paramedics arrived later in the afternoon. She claimed that she "cleaned" him and went to get ice cream for him, at his request. She apparently saw no need to call 911, and she did not see that C.F. received the medical help that he so desperately needed. C.F.'s condition developed because he was not given the basic care that he needed to avoid bed sores, maggots, and infections. His condition was not hidden from casual observation. As C.F.'s health care worker, who saw him five days a week in his home and claimed to regularly move and wash him, appellant certainly should have been aware of C.F.'s condition and should have acted to address it – at minimum by calling for medical help or getting assistance from other people if his condition was beyond her ability to help him herself. Therefore, a rational factfinder certainly could have found, as the trial court found here, that appellant knowingly and willfully neglected C.F., in violation of Code § 18.2-369.

III. CONCLUSION

For the foregoing reasons, we find appellant was a "responsible person" under Code § 18.2-369 and that the evidence in this case was sufficient to convict her of neglecting the victim, an incapacitated adult. Therefore, we affirm appellant's conviction for felony neglect of an incapacitated adult.

Affirmed.