COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Petty, Beales and Chafin
Argued at Richmond, Virginia


TIMOTHY DAKOTA BOND

MEMORANDUM OPINION[*] BY
v.      Record No. 0505-13-2        JUDGE RANDOLPH A. BEALES
JANUARY 14, 2014

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF HOPEWELL
W. Allan Sharrett, Judge

Daniel P. Leavitt (Daniel P. Leavitt, PLLC, on brief), for appellant.

Leah A. Darron, Senior Assistant Attorney General (Kenneth T. Cuccinelli, II, Attorney General, on brief) for appellee.


The trial court found Timothy Dakota Bond (appellant) guilty of credit card fraud, in violation of Code § 18.2-195, and sentenced appellant to ten years of imprisonment (with nine years suspended).[1]  On appeal, appellant argues that the evidence was insufficient to support the credit card fraud conviction because "there was no direct evidence that the card was ever actually used, let alone that [appellant] used the card."  Appellant also contends that the trial court erred by shifting the burden of persuasion to appellant to prove he did not use the debit card.  Finally, appellant argues (and the Commonwealth agrees) that the trial court erred when it sentenced him to ten years for the credit card fraud conviction since credit card fraud is punished as a Class 6 felony, which carries a maximum sentence of five years.  For the following reasons, we affirm appellant's

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellant was also convicted of credit card theft, in violation of Code § 18.2-192.  However, appellant does not challenge this conviction on appeal.

conviction for credit card fraud.  However, we vacate the sentence that was imposed for the credit card fraud conviction and remand the matter solely for resentencing on that conviction.

## I. BACKGROUND

Applying the established standard of review on appeal, we consider the evidence at trial "'in the light most favorable to the Commonwealth, as we must since it was the prevailing party'" in the trial court.  Beasley v. Commonwealth, 60 Va. App. 381, 391, 728 S.E.2d 499, 504 (2012) (quoting Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004)).  At the time of the events giving rise to this appeal, appellant lived with his girlfriend (Jackie) and Jackie's parents.  At trial, Jackie's father (the victim) testified that sometime between July 2, 2012 and July 18, 2012, his wife asked him if he had been using their joint debit card.  The victim had not been using the debit card. The victim attempted to access the account online, but could not do so since the password had been changed.  Therefore, the victim went to the bank, asked the bank to reset the password, and discovered that the account was approximately $700 to $800 overdrawn.

After discovering that the account was overdrawn, the victim and his wife realized the debit card was missing.  They searched for the debit card, but could not find it.  The following day, the victim and his wife noticed that the deficit in their account had increased.[2]  Appellant had twice denied taking the debit card, but ultimately confessed that he had, in fact, taken the card.  The victim testified that, on the Friday of the week that the card had gone missing, appellant "looked at me and said, Jackie had nothing to do with it . . . I took the card, it's under the bed."[3]  Right after appellant made this admission, the victim looked under the bed and found the card.  According to the victim,

_____

[2] The victim testified that "well over $1,000" was taken from the account.

[3] The victim testified that he assumed appellant meant that he actually *used* the card when he admitted to *taking* the card.

the card had not been under the bed the previous day. Neither the victim nor the victim's wife had given appellant permission to use the card.

The trial court denied appellant's motion to strike the Commonwealth's evidence, reasoning, in part, as follows:

> [I]t's no leap in logic, that if the card's gone . . . $1,000 is gone, that the card has been used to withdraw the money from the account. . . . [The victim] said, you know, I just assumed that he meant that she didn't have anything to do with taking it or of using it. I assume that, too. That's a perfectly fair deduction or inference from the statement that the defendant made. Had there been no money missing from the account, had there been no evidence of money missing, it might be a different issue. But you've got that.

After the trial court's ruling on appellant's motion to strike, appellant's counsel asserted that there was no proof of actual use of the debit card by appellant. The trial court asked appellant's counsel, "[w]hy else do you take a credit card, if you're not going to use it . . . [a]nd that there's money missing from the account . . . how else does it get out if he doesn't use the card when he takes it?" Appellant's counsel responded, "Your Honor, essentially what you're saying is that he has to prove he's innocent." In response to that statement, the trial court said, once again, that it was drawing a reasonable inference, and analogized the situation to the permissive inference that a person in possession of recently stolen goods is the thief.

## II. ANALYSIS

### A. Sufficiency of the Evidence

Appellant's first assignment of error challenges the sufficiency of the evidence to support his credit card fraud conviction. When considering the sufficiency of the evidence on appeal, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the

- 3 -

trial court," Riner, 268 Va. at 330, 601 S.E.2d at 574, "[w]e must instead ask whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Crowder, 41 Va. App. at 663, 588 S.E.2d at 387 (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*)). See also Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.

Code § 18.2-195(1)(a) provides that:

> A person is guilty of credit card fraud when, with intent to defraud any person, he: *Uses* for the purpose of obtaining money, goods, services, or anything else of value a credit card or credit card number obtained or retained in violation of § 18.2-192 or a credit card or credit card number which he knows is expired or revoked.[4]

(Emphasis added).

Viewing the evidence in the light most favorable to the Commonwealth (as we must since it was the prevailing party at trial), a rational trier of fact could find that appellant actually used the debit card. In a circumstantial evidence case, such as this one, the "combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion." Dowden v. Commonwealth, 260 Va. 459, 470, 536 S.E.2d 437, 443 (2000). Here, the combined force of several circumstances in the record suggests that a finder of fact reasonably could have found appellant guilty of credit card fraud.

---

[4] The card at issue in this case was a debit card, rather than a credit card. However, debit cards are included within the ambit of Code § 18.2-195. See Code § 18.2-191 (defining "credit card," which, "[f]or the purpose of this article . . . *shall also include* a similar device, whether knows as *a debit card*, or any other name, issued with or without fee by an issuer for the use of the cardholder in obtaining money, goods, services or anything else of value by charging the account of the cardholder in obtaining money, goods, services, or anything else of value by charging the account of the cardholder with a bank or any other person even though no credit is thereby extended" (emphasis added)).

First, appellant twice denied taking the debit card.  See Covil v. Commonwealth, 268 Va. 692, 696, 604 S.E.2d 79, 82 (2004) (noting that "[a] false or evasive account is a circumstance, similar to flight from a crime scene, that a fact-finder may properly consider as evidence of guilty knowledge").  Second, after the two false denials, appellant finally admitted knowing what had happened to the missing debit card, stating, "Jackie had nothing to do with it . . . I took the card, it's under the bed."  Third, around the time that the victim noticed the debit card was missing, the account balance was decreasing.  Fourth, the password to the online account had been changed around the time that the card went missing and the balance began decreasing.  Finally, the victim found the card in the spot where appellant said he could find the card – in a location where the victim testified that the card had not been the previous day.

By appellant's own admission, Jackie, the only other person in the household who did *not* have authority to use the debit card, "had nothing to do with it."  Given the totality of the circumstances in the record, a rational trier of fact could infer from the statement "Jackie had nothing to do with it" that Jackie neither took nor *used* the debit card.  Thus, appellant's own words and confessed actions eliminate the possibility that anyone in the household other than appellant could have used the debit card in a fraudulent manner.

On brief and at oral argument, appellant relied on Thompson v. Commonwealth, Record No. 0018-10-4, 2010 Va. App. LEXIS 392, *6-7 (Va. Ct. App. Oct. 5, 2010), an unpublished opinion, where this Court found that the circumstantial evidence was insufficient to sustain the defendant's conviction for felony credit card fraud.  "Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value."  Otey v. Commonwealth, 61 Va. App. 346, 350, 735 S.E.2d 255, 257 (2012) (citing Rule 5A:1(f)).  However, the decision in Thompson is not persuasive on our analysis here, especially given that the circumstances in Thompson were substantially different than the circumstances here.

In Thompson, fifteen credit cards and a cell phone were stolen from the victim's home. Thompson, 2010 Va. App. LEXIS 392, at *3. On the day that the fifteen credit cards went missing, one of the fifteen credit cards had been used to make an unauthorized purchase at a Wal-Mart store and at a Finish Line shoe store. Id. The defendant's girlfriend testified that the defendant handed her a credit card and that she used that card to make a $154.60 purchase in Wal-Mart. Id. That credit card belonged to the victim. Id. A clerk from Finish Line testified that on the day in question, the person who used the victim's credit card to make a $131.24 purchase was an African-American male, but the clerk could not provide any additional information about the credit card user. Id. at *3-4. On appeal, this Court noted that the evidence of the defendant's culpability was "somewhat tenuous," even in the view of the trial judge who had nevertheless found that the evidence was sufficient to find the defendant guilty of felony credit card fraud arising from the total of the $154.60 purchase at the Wal-Mart store and the $131.24 purchase at the Finish Line store. Id. at *4. This Court concluded that "the record is devoid of any details regarding the proximity in time between the two transactions . . . or the distance between the two stores" and that "the evidence that appellant was the African-American male who stole shoes from the Finish Line, at best, was speculative." Consequently, this Court reversed the defendant's conviction for felony credit card fraud, and remanded to the trial court with instructions to sentence appellant for misdemeanor credit card fraud since the theft from the Finish Line store could not be counted toward the $200 threshold for felony credit card fraud. Id. at *6-7.

Here, however, unlike in Thompson, the world of potential card users is quite small. In Thompson, any person fitting the description of "an African-American male" could have used the card in the Finish Line store. By contrast, in this case, the world of potential users is limited to four people. Neither the victim nor his wife was responsible for the approximately $1,000 that went missing from the account, about which they were extremely worried. Appellant admitted that

Jackie "had nothing to do with it," and the trial court was entitled to infer that "it" referred to both the theft of the card *and* the use of the card. Thus, viewing the evidence in the light most favorable to the Commonwealth (as we must since the Commonwealth prevailed below), a rational trier of fact could determine that the evidence was sufficient to convict appellant of credit card fraud.

## B. Alleged Burden-Shifting

In his second assignment of error, appellant argues that the trial court impermissibly shifted the burden of persuasion to appellant and required appellant to show that he did not actually use the card that he took. "A permissive inference does not relieve the [Commonwealth] of its burden of persuasion because it still requires the [Commonwealth] to convince the [trier of fact] that the suggested conclusion should be inferred based on the predicate facts proved." Dobson v. Commonwealth, 260 Va. 71, 75, 531 S.E.2d 569, 572 (2000) (quoting Francis v. Franklin, 471 U.S. 307, 314 (1985)).

The record is simply devoid of any indication that the trial court impermissibly shifted the burden to appellant to prove that he did not take the debit card. Indeed, the trial court simply made an inference that appellant used the card after taking it based on the following facts: (1) appellant denied taking the debit card, (2) appellant later admitted to taking the debit card, (3) appellant said that "Jackie had nothing to do with it," (4) the password to the account had been changed, and (5) the account was overdrawn around the time the card went missing and the password was changed. The decisions of the Supreme Court of Virginia plainly hold that the deference accorded to the factfinder "applies not only to findings of fact, but also to any reasonable and justified inferences the fact-finder may have drawn from the facts proved." Sullivan v. Commonwealth, 280 Va. 672, 676, 701 S.E.2d 61, 63-64 (2010). Drawing reasonable inferences from the evidence, the trial court rejected appellant's hypothesis of innocence, as it was entitled to do. See Clanton v. Commonwealth, 53 Va. App. 561, 572-73, 673 S.E.2d 904, 910 (2009) (*en banc*). A trial court

does not shift the burden of persuasion to the defendant simply because it rejects the defendant's hypothesis of innocence.

## C. Appellant's Sentence

We agree with both parties that appellant received an improper sentence for his credit card fraud conviction and that, therefore, appellant's sentence for credit card fraud should be vacated and remanded for *resentencing*.

Appellant received a ten-year sentence for his credit card fraud conviction. Credit card fraud is punishable in this case as a Class 6 felony, since the value of money fraudulently obtained exceeds the $200 threshold.[5] Code § 18.2-10(f) provides that the punishment for a Class 6 felony conviction is "a term of imprisonment of not less than one year nor more than five years, or in the discretion of the jury or the court trying the case without a jury, confinement in jail for not more than 12 months and a fine of not more than $2,500, either or both." Thus, we must vacate the ten-year sentence imposed for appellant's credit card fraud conviction because that sentence exceeded the maximum sentence authorized by law. Accordingly, resentencing by the trial court for the credit card fraud conviction is required. See Code §§ 19.2-257 and 19.2-295.1.

---

[5] Code § 18.2-195(3) provides that:

> Conviction of credit card fraud is punishable as a Class 1 misdemeanor if the value of all money, goods, services and other things of value furnished in violation of this section, or if the difference between the value of all money, goods, services and anything else of value actually furnished and the value represented to the issuer to have been furnished in violation of this section, does not exceed $200 in any six-month period; *conviction of credit card fraud is punishable as a Class 6 felony if such value exceeds $200 in any six-month period*.

(Emphasis added).

### III. CONCLUSION

The record establishes that appellant denied taking the debit card, later admitted to taking the debit card, told the victim exactly where the once-missing debit card was located, and stated to the victim that "Jackie had nothing to do with it." In addition, the record establishes that the password on the account associated with the debit card was changed around the time the card went missing and that the account had been overdrawn around the time the card went missing. Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party below, a rational trier of fact could find appellant guilty of credit card fraud. Because the sentence appellant received for his credit card fraud conviction exceeded the statutory maximum for a sentence allowed for that offense, however, we vacate that sentence and remand the matter to the trial court solely for resentencing on the credit card fraud conviction.

Affirmed in part,<br>
reversed in part,<br>
and remanded.