UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Russell, Ortiz and Raphael
Argued at Richmond, Virginia


ANTOINE L. DEAN, S/K/A
  ANTWON DEAN
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0764-21-2                      JUDGE STUART A. RAPHAEL
                                                    MAY 24, 2022
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
Joseph M. Teefey, Jr., Judge

Todd M. Ritter (Hill & Rainey, on brief), for appellant.

Craig W. Stallard, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Following a bench trial, appellant was convicted of two counts of driving with a

suspended license, two counts of possession with intent to distribute a controlled substance, one

count of assault and battery of a law-enforcement officer, and one count of possession of a

controlled substance.[1]  The court sentenced appellant to a prison term of fifty years and twelve

months, with forty-five years, sixteen months, and forty days suspended.  Appellant claims that

the evidence was insufficient to sustain two of the drug convictions.  We disagree and affirm the

trial court's judgment.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] We refer to Mr. Dean as "appellant" because he is a different "Dean" from Detective
David Dean, who arrested appellant in connection with the December 2018 incident at issue in
this case.

BACKGROUND

The drug charges here arise from separate incidents five months apart. We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).

## A. The July 2018 Incident

On the evening of July 19, 2018, Officer J.J. Robertson of the Petersburg Bureau of Police observed appellant's vehicle speeding on Farmer Street in the City of Petersburg. Robertson initiated a traffic stop and walked up to the driver's side of the vehicle. Appellant opened the door, saying that the window would not roll down. Robertson observed a "see-through" white baggy on the driver's side floorboard with a white residue that he suspected to be narcotics. As Robertson explained the reason for the stop, appellant tried to pull the door closed, but Robertson held it open. Appellant then "came" at Robertson like a "football player attempting to rush somebody," but Robertson successfully subdued him while awaiting backup. Other officers arrived to assist less than a minute later, and appellant and his passenger were placed in handcuffs.

Robertson searched the vehicle and was able to "confirm that [the white residue in the bag] was actually what appeared to be an illegal substance." Also on the driver's side floorboard, Robertson found appellant's Virginia identification card and a "zip-up style" lunchbox. The lunchbox contained more than a hundred clear plastic bags, fifty lottery tickets, white inositol powder, white inositol tablets, latex gloves, BC powder, and two burnt pens. Robertson found two digital scales and two plastic spoons in the compartment of the driver's side door.

Robertson also found a bag in the center console "in plain view" that contained a large quantity of a "rock-like and powder-like substance." The Department of Forensic Science later determined that the bag contained 19.20 grams of powder cocaine. That was the only item from the vehicle that tested positive for cocaine.

When Robertson questioned him, appellant waived his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), denied any knowledge of the substances, and claimed that he had not been speeding. Appellant admitted that the car was registered to him. He said that the lunchbox was his and that he used the inositol tablets and powder to control his weight. Appellant also admitted that one of the scales was his and that he used it to weigh the dietary supplements. He said the spoons in the door were there when he bought the car. He claimed to know nothing about the large bag of white powder in the center console.

Appellant was charged with driving on a suspended license, subsequent offense, possession with intent to distribute a controlled substance, and assault and battery of a law-enforcement officer. Appellant pleaded guilty to the assault-and-battery charge and not guilty to the rest. At trial, he was convicted of the driving-on-a-suspended-license charge.

As for the possession-with-intent-to-distribute charge, appellant said he never saw the plastic baggy on the driver's side floorboard or the bag of cocaine in the center console. He claims to have been giving his passenger a ride to an ATM machine when he stopped for gas.

Contrary to what he first told Robertson—that the spoons were in the car when he bought it—appellant testified at trial that the spoons were his. And while Robertson testified that inositol power is typically used to cut cocaine, appellant said he used the spoons to put the powder on a lottery ticket to weigh it on his digital scale before mixing it with water as a weight-loss measure. Appellant said he used the plastic bags in the lunchbox to "bag candy up" for his kids.

In closing, appellant's counsel argued that "the bag of cocaine found in a conspicuous place between two individuals [was not] his, and that the evidence certainly could suggest that the other person, upon encounter with the police, discarded those items from his person." The trial court rejected that theory and found appellant guilty of possession with intent to distribute a controlled substance.

### B. The December 2018 Incident

On December 17, 2018, Detective David Dean of the Petersburg Bureau of Police observed a light blue Audi traveling on South Jones Street in the City of Petersburg. After the driver spotted Detective Dean, the Audi came to a stop and remained stopped for "an extremely long amount of time." After circling the block, Detective Dean found appellant sitting in the driver's seat of his vehicle, alone, parked in front of a residence. As Detective Dean approached, appellant exited the vehicle, locked the doors, and began yelling that Detective Dean was harassing him.

Detective Dean performed a records search and discovered that appellant had been driving on a suspended license, which appellant admitted. Detective Dean requested the car keys and appellant's license. Appellant said his license was inside the residence, and Detective Dean allowed him to go inside to get it. After appellant entered the residence, however, a barking dog drew Detective Dean's attention to the backyard, where he spotted appellant jumping over the back fence. Detective Dean knocked on the door of the residence, and the young woman who answered said she did not know appellant.

Detective Dean conducted an inventory search of appellant's vehicle before impounding it. He found a clear baggy on the passenger seat containing what was later confirmed to be 1.2016 grams of cocaine. The bag of cocaine was sitting on top of a summons with appellant's

- 4 -

name on it.  Detective Dean also found appellant's cell phone in the vehicle.  Appellant was charged with driving on a suspended license and possession of a controlled substance.

At trial, appellant testified that he had been talking with someone on his phone "for a couple [of] hours" and listening to a police scanner on a separate phone when he discovered that his phone battery was low.  Appellant said he had been charging his phone inside the car for ten to fifteen minutes when Detective Dean appeared.  Seeing Detective Dean approach, appellant "g[o]t out of the car and lock[ed] the door" and walked toward the house.  Appellant said he did not want to give Detective Dean his license because he wasn't "suspected of committing a crime."  Appellant denied having fled from the residence, claiming that he had been inside all along, including while his car was being towed.

In closing, appellant argued that the evidence did not show that he had dominion or control over the cocaine.  But the trial judge found appellant guilty of possession of a controlled substance.  The judge specifically found appellant "not credible" and the testimony of Detective Dean "credible."  The court pondered, "why would you leave your cell phone and a . . . summons that you need to pay . . . and just stay in the house and just say forget it? . . .  Well, because there is cocaine sitting . . . underneath that uniform summons."[2]

ANALYSIS

"In general, when reviewing a challenge to the sufficiency of the evidence to support a conviction, an appellate court . . . reverses the judgment of the trial court only when its decision is plainly wrong or without evidence to support it."  *Marshall v. Commonwealth*, 69 Va. App. 648, 652-53 (2019).  "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the

---

[2] The trial court also found appellant guilty of driving with a suspended license. Appellant has not challenged that conviction.

conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

"To convict a person of possessing illegal drugs, 'the Commonwealth must prove that the defendant was aware of the presence and character of the drugs and that he intentionally and consciously possessed them.'" *Watts v. Commonwealth*, 57 Va. App. 217, 232 (2010) (quoting *Andrews v. Commonwealth*, 216 Va. 179, 182 (1975)). "Possession of a controlled substance may be actual or constructive." *Id.* "Constructive possession of drugs can be shown by 'acts, statements, or conduct of the accused or other facts or circumstances which tend to show that [he] was aware of both the presence and character of the substance and that it was subject to his dominion and control.'" *Bagley v. Commonwealth*, 73 Va. App. 1, 27 (2021) (quoting *Wilson v. Commonwealth*, 272 Va. 19, 27 (2006)). The "'ownership or occupancy of [a vehicle in which drugs are] found' is a factor that 'may be considered in deciding whether an accused possessed the drug[s].'" *Id.* (quoting *Wilson*, 272 Va. at 27).

### A. The July 2018 Possession-with-Intent-to-Distribute Charge

Appellant argues that the evidence from the July 2018 incident failed to show that he constructively possessed the bag of cocaine found in the center console of his vehicle. We are not persuaded.

"Possession may be joint or several. Two or more persons may be in possession where each has the power of control and intends to exercise control jointly." *Atkins v. Commonwealth*, 57 Va. App. 2, 23 (2010) (quoting *Burnette v. Commonwealth*, 194 Va. 785, 792 (1953)); *see also Bagley*, 73 Va. App. at 27. The Commonwealth was "not required to exclude the 'possibility that someone else may have planted, discarded, abandoned or placed the drugs . . . in the [car]' in order to prove that appellant constructively possessed them." *Bagley*, 73 Va. App. at

27-28 (second alteration in original) (quoting *Brown v. Commonwealth*, 15 Va. App. 1, 10 (1992) (*en banc*)).

Here, appellant admitted to owning and driving the car in which 19.20 grams of cocaine were found in a conspicuous location in the center console, within his reach. Appellant also admitted to owning the lunchbox and everything in it, including the 100 clear plastic bags, fifty unused lottery tickets, white inositol powder, white inositol tablets, latex gloves, BC powder, and burnt pens. Robertson testified without objection that inositol is "typically" mixed into cocaine "to cut it" and reduce the risk of the user suffering "major adverse responses." Appellant also acknowledged ownership of one scale and the spoons. Those items were clustered around the driver's seat, not the passenger's.

To be sure, appellant denied knowing that the cocaine was sitting in the center console next to him. But the trial court found appellant's testimony "not credible." Sitting as factfinder, "the trial court was at liberty to discount [appellant]'s self-serving statements as little more than lying to 'conceal his guilt,' and could treat such prevarications as 'affirmative evidence of guilt.'" *Coleman v. Commonwealth*, 52 Va. App. 19, 25 (2008) (first quoting *Haskins v. Commonwealth*, 44 Va. App. 1, 10 (2004); then quoting *Wright v. West*, 505 U.S. 277, 296 (1992)).

The trial court also properly found that appellant's attempt to flee evidenced his consciousness of his guilt. For "it is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest . . . and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself." *Lambert v. Commonwealth*, 70 Va. App. 740, 760 (2019) (quoting *Langhorne v. Commonwealth*, 13 Va. App. 97, 102 (1991)).

We disagree with appellant that this case is like *Maxwell v. Commonwealth*, 275 Va. 437 (2008), which his counsel identified at oral argument as appellant's strongest authority. After

Maxwell eluded police and was apprehended walking away from several stacks of plywood in a lumberyard, the police found a bag of drugs near the stacks. *Id.* at 440. The Supreme Court found that evidence insufficient to prove that Maxwell had possessed the drugs: "[a]ll the Commonwealth [was] left with" was "evidence that the defendant was seen near the stacks of plywood where the drugs were found." *Id.* at 444.

By contrast, the drugs here were found in the center console of appellant's own car, well within his reach, and alongside items consistent with drug distribution, including the inositol powder that appellant admitted was his. We therefore conclude that the trial court had sufficient evidence to find the defendant guilty beyond a reasonable doubt of possession with intent to distribute.

### B. The December 2018 Possession Charge

Challenging his conviction for the December 2018 encounter, appellant argues that there was no forensic evidence linking him to the bag of cocaine on the passenger seat of the car in which he had been sitting. He also says that he made no incriminating statements about the drugs.

But Detective Dean found the cocaine on the passenger seat of appellant's vehicle on top of a summons with appellant's name on it. According to appellant's own testimony, he had been in the vehicle for about ten to fifteen minutes before Detective Dean appeared. There was no evidence that any other person had been inside the vehicle.

Although "[p]ossession of a vehicle does not create a presumption of 'knowing possession' of drugs found inside it," the "finder of fact may infer from the value of [the] drugs . . . that it is unlikely . . . a transient would leave [them] in a place not under his dominion and control." *Bagley*, 73 Va. App. at 27 (quoting *Brown*, 15 Va. App. at 9). Here, appellant's

proximity to the bag of cocaine, the placement of the bag on top of a summons issued to him, his ownership of the vehicle, and the absence of any passenger supported the conviction.

What is more, as in the July 2018 incident, appellant fled the scene during the December 2018 incident. Appellant contends that his "flight cannot be attributed to consciousness of guilt for the drugs but is plausibly explained by his desire to avoid arrest for [driving on a suspended license], or simply, his desire to be free from his perception of police harassment." But "while appellant's flight might have been attributable to several causes, 'consciousness of guilt' could be inferred by the trial court if any one of those causes" related to the offense in question. *Ricks v. Commonwealth*, 39 Va. App. 330, 337 (2002).

The court thus properly found it incriminating that appellant ran away from Detective Dean after being permitted to go inside the residence, supposedly to retrieve his license. Under his own version of the incident, appellant stayed inside the residence while his car was being towed. But even that version posed credibility problems. The trial court noted that appellant left his summons and phone in the vehicle, two "totally innocent items that a person would want to retrieve from the car before it's towed away." The trial court reasoned that appellant left those items in the car because of the presence of cocaine on the passenger seat.

Issues of witness credibility and the weight afforded a witness's testimony "are matters solely for the fact finder[,] who has the opportunity to see and hear that evidence as it is presented." *Gerald v. Commonwealth*, 295 Va. 469, 486 (2018) (quoting *Elliott v. Commonwealth*, 277 Va. 457, 462 (2009)). We cannot say that the trial court's determination in this case was "plainly wrong or without evidence to support it." *Elliott*, 277 Va. at 463.

CONCLUSION

We find no merit in either assignment of error.

*Affirmed.*