UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:    Judges Malveaux, Athey and Senior Judge Petty
Argued by videoconference


DUSTIN RAY FINNEY

                                              MEMORANDUM OPINION[*] BY
v.       Record No. 0589-24-3        JUDGE MARY BENNETT MALVEAUX
                                              DECEMBER 17, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
Stacey W. Moreau, Judge

James C. Martin (Martin & Martin Law Firm, on briefs), for
appellant.

Timothy Mark Davidson, Senior Assistant Attorney General (Jason
S. Miyares, Attorney General, on brief), for appellee.


The circuit court entered a final order committing Dustin Ray Finney to the custody of

the Department of Behavioral Health and Developmental Services ("DBHDS") for appropriate

treatment and confinement in a secure facility after a jury found by clear and convincing

evidence that he was a sexually violent predator. On appeal, Finney contends that the circuit

court abused its discretion by allowing inadmissible "bad acts" testimony at trial and denying his

motion to recuse. He also challenges the sufficiency of the evidence supporting the jury's

verdict. Finally, he contends that the circuit court erroneously committed him without ordering a

conditional release study.[1] Finding no error, we affirm.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] In a separate assignment of error, Finney also argued that the circuit court erred in
denying his motion to exclude certain drug references. Finney has withdrawn this assignment of
error.

BACKGROUND

When a respondent appeals a circuit court's judgment that he is a sexually violent predator, "we view the facts in the light most favorable to the Commonwealth, the prevailing party below." *Shivaee v. Commonwealth*, 270 Va. 112, 127 (2005). "We also accord the Commonwealth the benefit of all inferences fairly deducible from the evidence." *Id.*

In 2012, the Circuit Court of Pittsylvania County convicted Finney of carnal knowledge of a child between the age of 13 and 15 and indecent liberties with a child. At the time of the offenses, Finney was 19 years old and the victim, A.P., was 13 years old. The circuit court sentenced Finney to a total of 13 years' incarceration with 10 years and 6 months suspended.

Pittsylvania County Chief Probation and Parole Officer Kristine Bailey supervised Finney's probation from April 2014 to February 2015. The conditions of his probation required Finney to complete a sexual history disclosure form and prohibited any unsupervised contact with minors. On the form, Finney stated when he was 19 and A.P. was 13, he engaged in oral and vaginal sexual intercourse with A.P. He also admitted to having sexual contact with 2 different 15-year-old girls when he was 19.

Senior Probation and Parole Officer Aimee Chesher began supervising Finney in April 2015. That same month, she asked Finney whether he had "contact[ed] his former victim," A.P., who was still a minor. Finney initially denied "having contact with" A.P. but later acknowledged seeing "her in the community." He also "passed a message to" her through his friend. Officer Chesher required Finney to re-sign the special conditions form to remind him that he was prohibited from having unsupervised contact with minors as a condition of his probation.

In July 2015, Finney admitted to Officer Chesher to "being in the presence" of S.E., who was a minor. Finney and Chesher "again reviewed the special conditions" of his probation, and Chesher wrote on the conditions form "no contact with anyone under [18], period." The next

month, Finney tested positive for "illegal substances," a violation of the terms of his probation. He also admitted to being "around" S.E. and to having contact with additional minors who were related to him. He told Chesher that he "did not have the control to not be around children" because he could not "control what other people do." Chesher reported the above violations to the circuit court, which revoked Finney's previously suspended sentences and resuspended all but one year and six months.

Finney reentered supervised probation in December 2016 but repeatedly refused to attend required appointments with Officer Chesher. He also admitted that he had consumed alcohol and "got high" on New Year's Eve. Finney never "voluntarily return[ed] to" the probation office. In July 2017, Virginia State Police Special Agent Matthew Wade attempted to execute an arrest warrant for Finney. Finney "barricaded himself in the house" for approximately 45 minutes before surrendering. S.E., then 17 years old, was inside the residence with Finney when the officers arrived. In July 2018, the circuit court again revoked Finney's previously suspended sentences, this time imposing a three-year active sentence.

In May 2022, the Commonwealth petitioned the circuit court to civilly commit Finney as a sexually violent predator under Code § 37.2-900. After a hearing in September 2022, the circuit court found that that the Commonwealth had "set forth probable cause" that Finney was a sexually violent predator. *See* Code § 37.2-906.

Following the probable cause hearing, Finney moved to recuse the circuit court judge, alleging on "information and belief" that the judge previously represented his father in a civil case regarding custody of him. Finney also moved *in limine* to "exclude bad acts without proper adjudication"—specifically, "allegations of sexual impropriety, abuse and/or crimes," and "the facts of" Finney's underlying "criminal adjudication." He argued that "[s]uch references would be unduly prejudicial to [him] in the eyes of the jury, outweighing any probative value to a degree that

no instruction by the [c]ourt could cure such prejudice." Further, he contended that the Commonwealth should be prohibited from presenting evidence about "any fact that has merely been adjudicated in a hearing with a lesser burden of proof such as a revocation hearing." In a separate motion, Finney also asked the circuit court to exclude "references to alleged drug use and/or other drug crimes."

At a hearing on July 28, 2023, the circuit court noted that it had "take[n] up" the recusal motion at a hearing on May 30, 2023. The court indicated that it had denied the recusal motion "in open court" at the May 30 hearing. The court also entered a written order on September 25, 2023, indicating that it had denied the recusal motion at the May 30 hearing "for reasons stated on the record." Addressing the evidentiary motions, Finney argued that "there is no [e]xception to the [h]earsay [r]ule" for sexually violent predator proceedings, while acknowledging that the Commonwealth could introduce evidence of underlying convictions. But he argued that facts "presented at a [r]evocation [h]earing" do not "come in the same way as a[n] underlying conviction does" in a sexually violent predator proceeding.

The Commonwealth responded that evidence of Finney's sexual misconduct should not be excluded because it was highly probative of his status as a sexually violent predator. It further argued that it was not seeking to admit hearsay evidence at trial. But it contended that its expert witness could rely on hearsay in forming his opinions and could "cite [his] sources" to the jury.

After considering the parties' arguments, the circuit court stated that it was "premature" to consider "exclud[ing] violen[t] acts." In a written order, the circuit court concluded that "[p]rior court documents and orders showing" that Finney "was found in violation of his terms of probation [were] admissible." The Commonwealth could "call fact witnesses to testify to their own observations and their actions taken based upon those observations." Further, the Commonwealth's expert witness could "rely upon [Finney's] prior probation violations and the facts underlying those

violations when forming his opinion." The expert could "give the basis for his opinions and cite the sources he relied upon" but could not "give hearsay testimony."

At the jury trial on the Commonwealth's petition to involuntarily commit Finney, Officer Bailey, Officer Chesher, and Special Agent Wade all testified regarding their interactions with Finney while he was on supervised probation. The circuit court admitted certified copies of Finney's sentencing order in the underlying criminal case and the two revocation orders. The court also, without objection, admitted Finney's sexual history disclosure form submitted to the probation office, in which he admitted to engaging in sexual contact with a 13 year old and two 15 year olds when he was 19.

Licensed clinical psychologist Dr. Glenn Rex Miller, Jr., was qualified by the circuit court as an "expert in the . . . diagnosis, evaluation[,] and treatment of sex offenders." Dr. Miller created the sex offender treatment program used by the Virginia Department of Corrections, had been designated as an expert at trial on sex offenders between 500 and 1,000 times, and had performed "thousands" of sex offender evaluations for both the Commonwealth and respondents.

Dr. Miller conducted a sexually violent predator evaluation for Finney. He examined "all aspects" of Finney's life, including his "history of offending against" minors, his performance on probation, and the interview Miller conducted with him. Using the *Diagnostic and Statistical Manual of Mental Disorders* ("DSM"), Dr. Miller diagnosed Finney with other specified paraphilic disorder, antisocial personality disorder, and "a variety of substance abuse disorders."

Dr. Miller defined paraphilia as "any kind of deviant sexual interest or behavior." He concluded that Finney's paraphilia was specified by hebephilia, which he explained was sexual interest in "young teenagers" between the ages of 12 and 15. Pursuant to the guidelines found in the DSM, Finney had to exhibit this interest for a six-month period to be diagnosed with paraphilia. Dr. Miller concluded that Finney satisfied this requirement by showing a "sustained interest in

teenagers." Dr. Miller noted that, by his own admission, Finney engaged in sexual activity with multiple teenagers while he was an adult. Dr. Miller further noted that Finney admitted, on his sexual history disclosure form submitted to the probation office, that he had groomed teenagers to engage in sexual conduct by "ma[king] them believe that [he] loved them and . . . would stay with them." Dr. Miller also concluded, based on Finney's statements made to him, that Finney "blam[ed]" A.P., who had "just turned" 13, "for having sex and pursuing him."

Dr. Miller acknowledged that the DSM did not list hebephilia as a paraphilia disorder but clarified that the specific paraphilic disorders enumerated in the DSM "do not exhaust the list of possible paraphilic disorders." Dr. Miller explained that Finney's hebephilia "ma[de] it difficult for him to prevent himself from engaging in sexual behavior with teenagers." When Dr. Miller asked Finney why he kept "doing this" even after being threatened with legal consequences, he responded that he "just like[d] the attention and the feel." Dr. Miller stated that hebephilia could not be "cured" but could be in "remission" with the proper treatment.

In addition, Dr. Miller testified that the DSM listed seven criteria for antisocial personality disorder: failure to conform to social norms, deception, impulsivity, a reckless disregard for public safety, irresponsibility, lack of guilt or remorse, and irritability and aggression. He concluded that Finney "basically ha[d] all of" them. Dr. Miller noted that Finney could not stop his antisocial behavior even when subjected to legal consequences. Dr. Miller cited research showing that individuals with both paraphilia and antisociality are "the highest risk people" and stated that antisocial personality disorder was "even more difficult to manage than" paraphilia and made Finney "more likely" to engage in violent sexual behavior.

Dr. Miller used multiple diagnostic tools to assess Finney, including the Static-99R, VRAG, and Static-2002R, all of which suggested that Finney is at a high risk to sexually reoffend. He

testified that Finney's score of five on the Static-99R was "high," indicating that Finney was "three or four times more likely than an average sex offender to be reconvicted of a new sex offense."

Based on his entire evaluation, Dr. Miller opined, "to a reasonable degree of psychological certainty," that Finney "m[et] the criteria of a sexually violent predator" and that Finney's "conditions of antisocial personality disorder and hebephilia" made it difficult for him "to control his predatory behavior." He concluded that Finney's diagnoses "ma[de] it likely that" he would "commit a new sexually violent offense."

Licensed Clinical Psychologist Dr. Alan T.M. von Kleiss testified as Finney's expert witness. Dr. von Kleiss evaluated Finney and concluded that he did not suffer from any mental abnormalities or personality disorders that would make him quality as a sexually violent predator. Dr. von Kleiss administered both the Minnesota Multiphasic Personality Inventory ("MMPI-3") and the Personality Assessment Inventory ("PAI"), which he characterized as "very reliable and robust." On the MMPI-3, Finney received scores that von Kleiss described as "well within tolerance" and "not even close to being concerning." He also stated that the PAI "very, very conclusive[ly]" supported his determination that Finney did not have a personality disorder. Rather, "[t]he only things that these tests really supported was [Finney's] history of substance use."

Dr. von Kleiss found no objective evidence showing that Finney had "any kind" of paraphilia. He further stated that hebephilia was not listed in the International Classification of Diseases and was not an "accepted diagnosis anywhere." Dr. von Kleiss also opined that Finney's status as a "repeat offender" did not make him "more likely" to be a sexually violent predator. Dr. von Kleiss explained that there was "a substantial difference between general sex offenders," including repeat offenders, and "sexually violent predators." Specifically, sexually violent predator status required a predisposing mental health condition which, in his opinion, Finney lacked.

After Finney rested his case, Dr. Miller testified in rebuttal that he disagreed with Dr. von Kleiss's assertion that "hebephilia is not accepted as an appropriate diagnosis."

At the close of all the evidence, Finney moved to "strike or dismiss [the] case." He argued that the evidence could not be clear and convincing given Dr. Miller's and Dr. von Kleiss's "diametrically different view[s]" regarding his status as a sexually violent predator. The circuit court denied the motion, concluding that there was "enough evidence for the [jury] to determine credibility."

The circuit court then addressed whether to commit Finney for secure inpatient treatment or conditionally release him if the jury found him to be a sexually violent predator. The Commonwealth recalled Dr. Miller. Dr. Miller was "familiar with the four factors" in Code § 37.2-912(A). *See* Code § 37.2-912(A) (listing the criteria allowing a court to place a respondent on conditional release). Regarding the first factor, Dr. Miller concluded that Finney "need[ed] secure inpatient treatment to keep his condition from deteriorating." He stated that Finney "never had treatment before," was "in quite a bit of denial about his offenses" and "sexual interests," and had "done very poorly" in the community. As to the second factor, Dr. Miller testified that outpatient supervision and treatment options were "available" but not "appropriate" for Finney. According to Dr. Miller, "the only treatment that he would receive would be a group once a week for about an hour and a half," possibly by telephone or video. These resources were insufficient given Finney's denial of his status as a sex offender and failure to utilize the resources available to him on probation. For the same reasons, Dr. Miller also did not believe that Finney would "comply with the terms of release." Addressing the fourth factor, Dr. Miller believed that Finney's conditional release "would pose an undue risk of harm to public safety." Dr. Miller explained that Finney did not "follow the rules," abused drugs, and "put[] himself and other people at risk."

Dr. von Kleiss opined that Finney did not require secure inpatient treatment because his substance abuse conditions "appear[ed] to be substantially controlled." Moreover, he would not "have met admission criteria for inpatient treatment of his substance use conditions based upon the available information." Further, Dr. von Kleiss stated that it "appear[ed] outpatient sex offender specific treatment [was] appropriate for" Finney and that such "treatment [was] readily available." Regarding Finney's compliance with conditions of release, Dr. von Kleiss stated that the evidence supporting Finney's "personality dysfunction" rested exclusively with his criminal history, which was related to his history of substance use. Thus, if Finney abstained "from illicit or mood-altering substances," there would be "sufficient reason to believe that he would comply with community supervision requirements." Finally, Dr. von Kleiss stated that A.P. was "a victim of opportunity" and a "willing partner." Further, Finney's "current, recent, and historical behavior when not chronically intoxicated" did not "indicate that he pose[d] an undue risk to public safety."

The jury found that Finney was a sexually violent predator. Based on the evidence it presented, the Commonwealth moved to commit Finney. Finney objected and "ask[ed] for a study on conditional release" because "[t]here did seem to be some questions as to the availability of the local outpatient services," and Dr. von Kleiss "seemed to say that they were available." The Commonwealth responded that continuing the proceedings to provide for a conditional release study regarding the availability of outpatient services would be futile because the circuit court had to find the existence of all four factors to conditionally release Finney. Finney then argued again that a continuance for a study "would be warranted" in this case given the "disparate opinions of the doctors."

The circuit court found that, under the four factors in Code § 37.2-912(A), there was "no suitable less restrictive alternative to involuntary secured inpatient treatment." It explained that Finney "need[ed] treatment" and that it was "concerned [about] trying outpatient," given that

Finney never had treatment before and "denie[d] the need" for it. The court emphasized the testimony of Officer Bailey and Officer Chesher regarding Finney's repeated failures to comply with the terms of his supervised probation. It "ha[d] a lot of concern" that Finney would not "comply with the conditions" of release when he could not comply "with basic sex offender probation rules." The court likewise noted that Finney "continued to use illegal substances" on probation, and stated it had "great concern" about the risk to public safety "without him seeking the intensive treatment." Accordingly, the circuit court committed Finney to DBHDS's custody. This appeal followed.

ANALYSIS

I. Prior Bad Acts Evidence

"[W]e review a trial court's decision to admit or exclude evidence" for abuse of discretion. *Kenner v. Commonwealth*, 299 Va. 414, 423 (2021) (alteration in original) (quoting *Avent v. Commonwealth*, 279 Va. 175, 197 (2010)). "In evaluating whether a trial court abused its discretion, . . . 'we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action.'" *Carter v. Commonwealth*, 293 Va. 537, 543 (2017) (alteration in original) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)). "The abuse-of-discretion standard [also] includes review to determine that the discretion was not guided by erroneous legal conclusions." *Id.* at 543-44 (alteration in original) (quoting *Porter v. Commonwealth*, 276 Va. 203, 260 (2008)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Lambert v. Commonwealth*, 70 Va. App. 740, 749 (2019) (quoting *Thomas v. Commonwealth*, 44 Va. App. 741, 753, *adopted upon reh'g en banc*, 45 Va. App. 811 (2005)).

Finney argues that the circuit court erred by denying his motion *in limine* to exclude "other bad act" evidence. On brief, Finney does not identify any specific evidence that should have

been excluded; instead, he broadly asserts that the "'other bad act' evidence . . . included inadmissible hearsay which was not properly adjudicated . . . and was highly prejudicial" because it "related to allegations of sexual impropriety."

Because Finney does not state on brief what "other bad act" evidence should have been excluded at trial, we conclude that he has waived any argument on this issue. Rule 5A:20(e) requires an opening brief to contain "[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error." Under Rule 5A:20(e), this Court "is entitled to have the issues clearly defined and to be cited pertinent authority" in appellant's brief. *Bartley v. Commonwealth*, 67 Va. App. 740, 744 (2017) (quoting *Jones v. Commonwealth*, 51 Va. App. 730, 734 (2008)). This Court "will not search the record for errors in order to interpret the appellant's contention and correct deficiencies in a brief." *Yap v. Commonwealth*, 49 Va. App. 622, 629 (2007) (quoting *Buchanan v. Buchanan*, 14 Va. App. 53, 56 (1992)). "[I]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her." *Bartley*, 67 Va. App. at 746 (quoting *Sneed v. Bd. of Pro. Resp. of the Sup. Ct. of Tenn.*, 301 S.W.3d 603, 615 (Tenn. 2010)). "Nor is it this Court's 'function to comb through the record . . . in order to ferret-out for ourselves the validity of [appellant's] claims.'" *Burke v. Catawba Hosp.*, 59 Va. App. 828, 838 (2012) (alterations in original) (quoting *Fitzgerald v. Bass*, 6 Va. App. 38, 56 n.7 (1988) (en banc)). "[W]hen a party's '"failure to strictly adhere to the requirements of Rule 5A:20(e)" is significant,' this Court may treat the question as waived." *Bartley*, 67 Va. App. at 744 (quoting *Parks v. Parks*, 52 Va. App. 663, 664 (2008)).

Here, because Finney does not specifically identify the evidence that he challenges on appeal, we cannot determine whether the circuit court abused its discretion in denying his motion *in limine*. Accordingly, Finney has waived any argument regarding this assignment of error.

## II. Recusal

A circuit court's decision denying a motion to recuse is reviewed for abuse of discretion. *Wilson v. Commonwealth*, 272 Va. 19, 28 (2006). A judge's decision regarding recusal "must be guided not only by the true state of [her] impartiality, but also by the public perception of [her] fairness, in order that public confidence in the integrity of the judiciary may be maintained." *Id.* (quoting *Stamper v. Commonwealth*, 228 Va. 707, 714 (1985)). "[T]he abuse of discretion standard requires a reviewing court to show enough deference to a primary decisionmaker's judgment that the court does not reverse merely because the reviewing court would have come to a differen[t] result in the first instance." *Commonwealth v. Duse*, 295 Va. 1, 7 (2018) (first alteration in original) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 212 (2013)).

Finney argues that the circuit court erred by denying his recusal motion. He contends that the judge represented his father in prior domestic relations litigation, "which, although not indicating any wrongdoing on the trial judge's part, would create an appearance of impropriety in the present matter." The record, however, lacks a transcript necessary to permit our review of Finney's argument.

On appeal, we presume the circuit court's judgment is correct. *Bay v. Commonwealth*, 60 Va. App. 520, 528 (2012). The appellant bears the burden "to present to us a sufficient record from which we can determine whether the trial court has erred" as the appellant alleges. *Mintbrook Devs., LLC v. Groundscapes, LLC*, 76 Va. App. 279, 285 n.2 (2022) (quoting *Bay*, 60 Va. App. at 528). "In the absence [of a sufficient record], we will not consider the" asserted error. *Dixon v. Dixon*, 71 Va. App. 709, 716 (2020) (alteration in original) (quoting *Robinson v. Robinson*, 50 Va. App. 189, 197 (2007)). A transcript of any proceeding or a written statement of facts in lieu of transcript becomes part of the record if filed in the circuit court clerk's office within 60 days after entry of final judgment. Rule 5A:8(a), (c).

Here, at the July 28, 2023 motions hearing, the court indicated that it had addressed and denied the recusal motion "in open court" at the May 30, 2023 hearing. It also entered a written order on September 25, 2023, indicating that it had denied the recusal motion "for reasons stated on the record." The record, however, does not include a transcript of the May 30, 2023 hearing.

"When the appellant fails to ensure that the record contains transcripts or a written statement of facts necessary to permit resolution of appellate issues, any assignments of error affected by such omission will not be considered." Rule 5A:8(b)(4)(ii). If "the transcript is indispensable to the determination of the case, then the requirements for making the transcript a part of the record on appeal must be strictly adhered to. This Court has no authority to make exceptions to the filing requirements set out in the Rules." *Shiembob v. Shiembob*, 55 Va. App. 234, 246 (2009) (quoting *Turner v. Commonwealth*, 2 Va. App. 96, 99 (1986)). The decision to review a case on appeal without a relevant transcript or statement of facts is "the rare exception rather than the general rule." *Wolfe v. Commonwealth*, 6 Va. App. 640, 644 (1988).

The transcript of the May 30, 2023 hearing is indispensable to resolving this assignment of error. Finney alleged—upon information and belief—a factual circumstance that he argued gave rise to an appearance of a conflict of interest. Without the May 30, 2023 transcript, this Court lacks the circuit court's reasoning, and any factual findings made, in denying the motion. Thus, we cannot properly assess whether the court's decision not to recuse constituted an abuse of its discretion. The argument is therefore waived. *See* Rule 5A:8(b)(4)(ii).

### III. Sexually Violent Predator

To establish that Finney is a sexually violent predator, the Commonwealth was required to prove "by clear and convincing evidence that he had been convicted of a sexually violent offense and that, because of a mental abnormality or personality disorder, he finds it difficult to control his

predatory behavior which makes him likely to engage in sexually violent acts."[2] *Commonwealth v. Squire*, 278 Va. 746, 749 (2009); *see* Code § 37.2-900. An appellate court "will not reverse the judgment of the trial court unless it is plainly wrong or without evidence to support it." *Squire*, 278 Va. at 749.

Finney argues that the evidence adduced at trial was not sufficient to meet this standard. We disagree. Finney does not contest that he was convicted of carnal knowledge of a child, a sexually violent offense. *See* Code § 37.2-900. In relation to the requirement of a mental abnormality or personality disorder, Dr. Miller testified that, in his opinion, Finney suffered from two mental abnormalities: paraphilia and antisocial personality disorder. Concerning difficulty controlling predatory behavior making him likely to engage in sexually violent acts, Dr. Miller further opined that, to a reasonable degree of certainty, Finney's "conditions of antisocial personality disorder and hebephilia" made it difficult for him "to control his predatory behavior" and that Finney's diagnoses "ma[de] it likely that" he would "commit a new sexually violent offense." In addition to Dr. Miller's testimony, the evidence included Finney's admission of repeated sexual contact with 13- and 15-year-old girls as noted in his sexual history disclosure form. The jury also heard evidence of Finney's noncompliance with probation due to repeated contact with teenage girls. Based on this record, we cannot say that the jury was plainly wrong in determining that Finney is a sexually violent predator.

Despite this evidentiary record, Finney highlights Dr. von Kleiss's testimony that Finney did not suffer from any mental abnormalities or personality defects. He contends that Dr. Miller's and Dr. von Kleiss's conflicting testimony placed the evidentiary record "in equipoise," thereby

---

[2] Clear and convincing evidence is "that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Glynn v. Kenney*, 77 Va. App. 70, 78 (2023) (quoting *Brown v. Hardin*, 225 Va. 624, 637-38 (1983)).

precluding a rational fact finder from finding the statutory requirements by clear and convincing evidence. We disagree. "This evidence presented the jury with the classic 'battle of the experts.'" *Atkins v. Commonwealth*, 272 Va. 144, 154 (2006). In such a circumstance, it is "the jury's task to resolve the conflicts in the expert testimony and to decide which expert or experts were worthy of belief." *Id.* Put differently, the fact that Dr. Miller and Dr. von Kleiss reached opposite conclusions was not a reason to keep the case from the jury. Rather, it was the jury's role to determine which expert to credit, and we do not disturb that determination on appeal.[3]

## IV. Conditional Release

Once the jury determined by clear and convincing evidence that Finney was a sexually violent predator, the circuit court was required to "determine[] whether to commit" him to DBHDS's custody "or to continue the trial to receive additional evidence regarding possible alternatives to commitment." *Gibson v. Commonwealth*, 287 Va. 311, 316 (2014). A court "shall place the respondent on conditional release" after finding that

> (i) [the respondent] does not need secure inpatient treatment but needs outpatient treatment or monitoring to prevent his condition from deteriorating to a degree that he would need secure inpatient treatment; (ii) appropriate outpatient supervision and treatment are reasonably available; (iii) there is significant reason to believe that the respondent, if conditionally released, would comply with the conditions specified; and (iv) conditional release will not present an undue risk to public safety.

Code § 37.2-912(A); *Gibson*, 287 Va. at 317.

A circuit court may conditionally release a sexually violent predator only after determining "that he satisfies all four criteria stated in Code § 37.2-912(A)." *Lotz v. Commonwealth*, 277 Va. 345, 350 (2009). "[T]he burden of proving that there is no suitable less restrictive alternative to

---

[3] Finney also argues that "Dr. Miller's testimony was inherently incredible as a matter of law." Finney did not make this argument before the circuit court. Accordingly, we do not consider it on appeal. *See* Rule 5A:18.

involuntary confinement rests with the Commonwealth." *Gibson*, 287 Va. at 319 (quoting *McCloud v. Commonwealth*, 269 Va. 242, 261 (2005)). But when this Court reviews the circuit court's determination that conditional release is inapposite, we "view the evidence in the light most favorable to the Commonwealth." *Lotz*, 277 Va. at 349. The circuit court's judgment will not be set aside unless it is "plainly wrong or without evidence to support it." Code § 8.01-680; *see also Shivaee*, 270 Va. at 119-20 (reviewing an "evidentiary challenge" to a finding that respondent was a sexually violent predator for plain error under Code § 8.01-680).

Finney argues that the circuit court should not have committed him to DBHDS's custody for inpatient treatment "when conditional release was recommended by one of the doctors." He contends that "[s]ince no study was done, there is no way to know whether conditional release would have been feasible, but the evidence . . . does not show [that he was] so dangerous that this would not be a reasonable possibility." Again, we disagree.

Dr. Miller stated that none of the four factors required for conditional release applied to Finney. Finney presented Dr. von Kleiss's contrary opinion. Thus, there was not a lack of evidence regarding commitment versus conditional release; there was conflicting evidence. The circuit court explained in detail why it concluded that the four factors requiring conditional release were not satisfied in this case. Viewing the evidence in the light most favorable to the Commonwealth, we conclude the circuit court did not err by committing Finney and declining to continue the trial to order a conditional release study.

CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*

- 16 -